HELP HOBOKEN HOUSING, Plaintiff,

v.

CITY OF HOBOKEN, NEW JERSEY, Defendant,

and

Sonia Burgos, Margarita Sanabria and Campaign for Housing Justice, Defendants-Intervenors.

Civ. A. No. 86–3064.

United States District Court, D. New Jersey.

Dec. 30, 1986.

Lum, Hoens, Abeles, Conant & Danzis by Roger P. Sauer, Roseland, N.J., for plaintiff.

Salvatore D'Amelio, Law Div., City of Hoboken, Hoboken, N.J. (Carl S. Bisgaier, Cherry Hill, N.J., of counsel), for defendant.

Hudson County Legal Services Corp. by Maureen C. Schweitzer, Claudette St. Romain, Jersey City, N.J., for defendants-intervenors Burgos and Sanabria.

Ira Karasick, George Aviles, Jersey City, N.J., for defendant-intervenor Campaign for Housing Justice.

STERN, District Judge.

■ Plaintiff is an unincorporated association of developers which own property in the City of Hoboken.[1] In this suit the association seeks a declaratory judgment that an ordinance passed by the City Council and signed by the Mayor of Hoboken violates federal constitutional and statutory rights of the association and, furthermore, that the city ordinance is preempted by legislation enacted by the State of New Jersey.

The ordinance is numbered "Ordinance V–51," and is entitled "An Ordinance Prohibiting the Withholding of Certain Residential Units from the Rental Housing Market Within the City of Hoboken." The ordinance requires owners of apartment units to notify the city's Rent Levelling Board of vacancies of over thirty days. Any owner of a unit remaining vacant for over sixty days may be punished by a fine of not more than $500 per day. The Rént Levelling Board can grant a waiver to any landlord wanting to keep a unit vacant for more than sixty days for one of three enumerated reasons. Two of these reasons

1. The plaintiff is a somewhat mysterious organization. Its address is given in the complaint merely as "Hoboken, New Jersey." No officers, directors, or spokesmen for the organization—other than its attorneys—have been identified to the Court. The complaint does not identify any members of the organization by name. However, at least one owner of property in Hoboken, Edward J. Carcich, has claimed in an affidavit to be a member of the plaintiff.

The plaintiff claims to bring this suit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Affidavits submitted by Mitchell Markey, who identifies himself as general partner of CoMark Properties, and Bronwyn Kay, who identifies himself or herself as general partner of M.C. Associates, assert that their respective partnerships are members of the "plaintiff class."

It has not yet been practicable, and it will not be necessary, to determine whether this action may be maintained as a class action, Fed.R.Civ.P. 23(c)(1). However, it appears that "Help Hoboken Housing," which itself does not appear to be a property owner, is not a proper class representative for a class of property owners, *Black Grievance Committee v. Philadelphia Electric Co.*, 79 F.R.D. 98, 110 (E.D.Pa.1978).

Five days before the motion to dismiss of defendant-intervenors was argued, the defendant City of Hoboken filed a separate notice of motion to dismiss. That motion would have been returnable on December 22, 1986. Rule 12(C) of the General Rules of this District. As a result of the disposition of defendant-intervenors' motion, defendant's motion will not be heard. However, the City raises the argument that the plaintiff association lacks standing under the Federal Constitution to maintain this lawsuit. Because "standing imports justiciability," *Warth v. Selden*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), this Court must be satisfied that there is before it a "case or controversy" within the meaning of Article III of the Constitution sufficient to invest the Court with jurisdiction.

Under the standard set in *Warth*, 422 U.S. at 515, 95 S.Ct. at 2213, and reiterated in *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), I find that the plaintiff has the requisite "associational standing" to maintain this suit. *See* Fed.R.Civ.P. 17(b).

concern maintenance and improvements to the apartment; the third allows a landlord to keep a unit vacant for occupation by a member of his or her family.

The ordinance exempts several categories of apartments from its provisions. These include units in owner-occupied buildings of four units or fewer; units in buildings participating in "an affordable housing project approved by the Community Development Agency of Hoboken;" and units in a building whose owner has transmitted his first sixty-day notice of intent to convert the building into a condominium or cooperative "and his full plan of conversion to the City Clerk pursuant to N.J.S.A. 2A:18–61.8."

That provision of the New Jersey statutes requires rental unit owners simultaneously to give tenants and the municipal clerk notice of intent to convert to condominium or cooperative ownership. The notice must include notification of the tenants' rights under the statute, including the right "to purchase ownership in the premises at a specified price in accordance with this section." The notice itself appears to trigger this purchase right. Thus any Hoboken landlord who wishes to convert rental property to condominium or cooperative ownership may take his property out of the ordinance by complying with the state's notice requirements.

According to the preamble of the ordinance, "the elimination of a substantial portion of the existing affordable rental housing stock, and insufficient new construction of affordable rental housing ... have caused a substantial and increasing shortage of rental housing affordable by families of low and moderate income." The resulting "housing emergency" is said to be "exacerbated by reason of the withholding by owners of available affordable housing units from the rental market in order to increase the value of their property at the expense of persons desiring to rent such housing units." This warehousing of vacant units is said to cause "severe economic and physical hardships to tenants," thus necessitating the ordinance "to protect the rights of tenants during the present affordable rental housing crisis in the City of Hoboken."

The Hoboken City Council enacted the ordinance on June 18, 1986, to take effect immediately. On August 1, 1986, plaintiff filed this action, and moved for a temporary restraining order preventing the city from enforcing the ordinance.[2] On August 4, after a hearing, Judge Lechner of this court entered an order temporarily restraining the city and its agents from enforcing the ordinance. Judge Lechner granted the request for temporary restraints and set a return date of August 11 for a hearing on plaintiff's preliminary injunction motion. His order states that it was granted in part due to the representation of counsel for the city that the ordinance was "pending before the Mayor and City Council of the City of Hoboken for additional consideration."

No hearing was held on August 11. Instead, counsel for plaintiff submitted a proposed order continuing restraints until September 8, 1986, when a hearing would be had. The city did not oppose the order, which represented that "action upon Ordinance V–51 still pends before the Mayor and Council of the City of Hoboken." This Court signed the order on August 18.

Instead of a hearing on September 8, the parties submitted a consent order continuing the restraints until October 27, 1986. The order stated in part that "the Ordinance ... is still under active consideration by the Mayor and Council of the City of

---

**2.** It does not appear that any enforcement activity took place before August 1st. The ordinance requires landlords to notify the Rent Levelling Board of vacant units no later than 35 days after the termination of the last tenancy. Landlords of units vacant for 30 days as of the date of the ordinance are required to file the required notification within fifteen days. Presumably, therefore, steps to force compliance with the ordinance could have been initiated beginning on July 3, 1986. However, plaintiff does not allege that any such steps were taken against any landlord in Hoboken.

Hoboken." This Court signed the order on September 23, 1986.[3]

Before that date arrived, a group of applicants to intervene as defendants made a motion to intervene as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. After a hearing, I granted the motion to intervene of three of the applicants: the Campaign for Housing Justice, an unincorporated association; Ms. Sonia Burgos; and Ms. Margarita Sanabria. In my letter-opinion of October 24, 1986, I noted that both the applicants for intervention and the plaintiff itself had provided the Court with reason to believe that the City Attorney of Hoboken sided with the plaintiff, and against its client, with regard to the key constitutional issues in this matter. I also noted that the City Attorney had made no response to these accusations or to the documents supporting them. "Under these circumstances," I held, "the position of the applicants that their interests are not adequately represented by counsel for the city is well taken."[4]

The delay occasioned by the motion to intervene, and the need to rule on a discovery motion, resulted in the rescheduling of the original motion for a preliminary injunction from November 24. The parties agreed orally to continue the restraints to that date. Also scheduled for hearing at that time was a motion brought by the intervenors to dismiss this action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion to dismiss will be granted, thus obviating the need to rule on the plaintiff's motion for a preliminary injunction.[5]

The complaint alleges that the ordinance violates six different provisions of federal law, and that the ordinance is preempted by various statutes of the State of New Jersey. As the federal claims have no merit, the Court will decline to exercise its pendant jurisdiction to hear the state law claims.

## The Fifth and Fourteenth Amendment Claims

### The Taking Claim

Plaintiff alleges that the ordinance violates the fifth and fourteenth amendments to the Federal Constitution in that it constitutes a taking of property without compensation.

The ordinance does not contemplate the city's physical occupation of property. Instead, it requires landlords to rent vacant apartments to paying tenants.

3. In hindsight, it appears that these orders imposing and continuing restraints may have been signed improvidently. The fact that the Mayor and City Council may have been reconsidering this ordinance was no reason to enter a federal court order restraining the city from enforcing it. If anything, the reverse is true, for if the city were to repeal or modify the ordinance, the likelihood of irreparable harm from its enforcement would be decreased. At the time, however, it appeared from the representations of counsel for both parties that the entry and continuation of restraints would aid in the amicable resolution of the dispute before the Court.

4. Shortly after that opinion and order was entered, the city retained the services of private counsel to serve of counsel to the city attorney; since that time the city's representation has been more than adequate.

5. Shortly before the motions were to be heard, the plaintiff filed a motion "for an order granting leave to amend and supplement the complaint." If the new complaint were substantively different from the original, it might be necessary for the defendant-intervenors to reformulate their motion to dismiss. However, the plaintiff's amendments merely elaborate on the original claims. The only supplemental information in the new complaint is a reference to an amendment of the ordinance passed on September 3, 1986. The change narrowed an exemption from the terms of the ordinance for "units in owner-occupied buildings," replacing that exception with one for units in buildings "where there are four units or less and one of these units is owner-occupied." This amendment has no impact on the validity of plaintiff's claims. Therefore, the Court's dismissal of the original complaint applies with equal force to the amended and supplemental complaint.

Parenthetically, the Court notes that soon after the City Council passed this amendment strengthening the ordinance, counsel for the plaintiff and for the city represented to the Court that the ordinance was "still under active consideration" by the Mayor and City Council. Consent Order of September 23, 1986.

Assuming for the moment that such regulation of rental property can be a taking of property, plaintiff's claim is at best premature. Because the ordinance has never been enforced, no property owner can point to any property whose value has been affected by this ordinance. Plaintiff's claim against the city thus amounts to what the Supreme Court has called a "facial challenge" to the ordinance. To succeed in a facial challenge, the plaintiff must show that the ordinance, on its face, effects a taking. *Hodel v. Virginia Surface Mining & Reclamation Association,* 452 U.S. 264, 295, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1 (1981). That case, involving a challenge to federal strip-mining regulatory statutes pointed out that when the "mere enactment" of a law is at issue, the test to be applied is whether the law "denies an owner economically viable use of his land," *Hodel,* 452 U.S. at 296, 101 S.Ct. at 2370, *quoting Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).

Under this ordinance, landlords will remain free to rent their apartments to paying tenants. Moreover, if they desire to convert property to condominium or cooperative ownership, they will be able to remove their buildings from the reach of the ordinance by complying with state filing requirements. Thus Hoboken landlords have not been deprived of all "economically viable" use of their property by this ordinance.[6]

Plaintiff claims that the passage of this ordinance will interfere with the investment-backed expectations of Hoboken redevelopers. Loss of future profits has been called a "slender reed upon which to rest a taking claim." *Andrus v. Allard,* 444 U.S. 51, 66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979). Nonetheless, it may be that the loss of an expectation interest may be a predicate for a taking claim even in the absence of a claim of economic non-viability. *Williamson County Regional Plan-*

*ning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 3120 n. 12, 87 L.Ed.2d 126 (1985). *Williamson* makes it clear, however, that such a claim is fraught with the difficulty of determining whether the reduced expectation rises to the level of a taking. It should not be entertained until a concrete dispute, focusing on a specific instance of an enforcement of an ordinance, is before the court. *Williamson,* 105 S.Ct. at 3121.

Here, as the ordinance has never been enforced, no such dispute is present. Moreover, it is not possible that the ordinance by itself—which merely prohibits the withholding of vacant apartments—could diminish a landowner's expectation interest. Although the point is never clearly stated, what plaintiff appears to complain about is the way this ordinance will interact with the city's rent-control ordinances and with the state's landlord-tenant statutes. The allegation appears to be that the ordinance will force landlords to choose between renting these apartments at controlled rents, or triggering tenants' rights to buy their units under N.J.S.A. 2A:18–61.-8. Whether such a choice will sufficiently reduce landlord's expectation interest in their investment so as to state a taking claim is completely speculative. It cannot serve to support a taking claim before any enforcement action has ever taken place.

■ The preceding discussion is premised on the assumption that regulation of rental housing can be a taking of property under the fifth and fourteenth amendments. In this Circuit, at least, that assumption is false. Thus there is a second, and even more compelling reason, to dismiss this claim.

In *Troy Ltd. v. Renna,* 727 F.2d 287 (3d Cir.1984), a New Jersey statute granting long-term protected tenancies to senior citizens and disabled persons was held not to implicate the taking clause. Relying on "the age-old distinction between regulation and public use," 727 F.2d at 301, the court

---

**6.** If plaintiff believes that Hoboken's rent-control laws do not permit landlords to make economically viable use of their property by rent-

ing to paying tenants, it is free to attack the constitutionality of those laws. That issue is not before this Court.

decided that government regulation of the landlord-tenant relationship does not implicate the constitutional prohibition against uncompensated government takings of private property for public use. Such regulation passes constitutional muster, therefore, provided it "satisfies the demands of due process and equal protection." 727 F.2d at 302. The holding in *Troy* leaves no doubt that the taking clause is not implicated in this case.

The *Troy* court held that "[s]tatutory tenancy laws protecting holdover tenants are not takings, but merely regulations of the use to which private property may be part," 727 F.2d at 302. In its brief in opposition to this motion, however, plaintiff asserts that "*Troy, Ltd.* did *not* hold that laws creating statutory tenancies are not takings, but merely regulations of the use to which private property may be part." (Emphasis in original.) The plaintiff apparently understood the court's holding to be *dicta*. That understanding is incorrect. The court expressly bottomed its decision on the absence of a taking, "in order to obviate the necessity to determine the factual question" of whether the state had provided just compensation by requiring the tenants to pay rent. 727 F.2d at 301. Thus the *Troy* decision binds this Court, and requires it to dismiss this claim.

*Substantive Due Process*

■ Plaintiff alleges in its complaint that the ordinance is an example of "excessive police power." It may be that regulation which is "'stretched as far' as to destroy property rights" violates the due process clause. *Williamson*, 105 S.Ct. at 3123, *quoting Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922). However, the same reasons for refusing to consider an expectation-interest taking claim apply to this sort of due process claim. *Williamson*, 105 S.Ct. at 3124. For the same reason that the taking claim could not survive, this aspect of the due process claim must also be dismissed.

■ The plaintiff also asserts that the ordinance is irrational in that it will not

further the purposes stated in the preamble. The preamble states that the practice of withholding housing units from the market is done "at the expense of persons desiring to rent such units;" and additionally that the ordinance is intended to "protect the rights of tenants."

The prohibition against withholding units is an obvious attempt to keep more units occupied in the short term. In addition, the interrelationship of the ordinance and the state landlord-tenant laws seems to be a rational way to protect the tenants' state-granted right to buy their units in the event of condo or co-op conversion.

The plaintiff argues, however, that in the long term the ordinance will have the effect of reducing available housing in Hoboken, by reducing the incentive to rehabilitate and renovate existing housing. This is a question of policy that should be addressed to the Mayor and City Council, and not to this Court. For instance, it may be that the city has decided to risk reduced overall housing stocks in the future in order to slow a current pattern of dispossession and dislocation of the city's poorest residents. Such a decision is completely within the province of the city. "In this sphere of economic and social regulation we 'properly defer to legislative judgment as to the necessity and reasonableness'" of the ordinance. *Troy*, 727 F.2d at 298, *quoting Energy Resources Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 103 S.Ct. 697, 706, 74 L.Ed.2d 569 (1983); *see City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

*Equal Protection*

■ Plaintiff asserts that the ordinance establishes "invidious discrimination," but the class of persons discriminated against is never defined. Neither "fundamental personal rights" nor classifications based on "distinctions such as race, religion, or alienage" are at issue here. Therefore, the ordinance must merely meet the test of being "rationally related to a legitimate [governmental] interest." *Dukes*, 427 U.S. at 303–304, 96 S.Ct. at 2517. As discussed

above, this ordinance easily meets this "rational relationship" test.

### Vagueness

■ In order to defeat a law on vagueness grounds in a facial challenge, a plaintiff must show that it is "impermissibly vague in all its applications." *Village of Hoffman Estates v. The Flipside, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

A law is impermissibly vague when "a person of ordinary intelligence" does not have "a reasonable opportunity to know what is prohibited," or when it fails to "provide explicit standards" to the persons charged with enforcing it. *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972).

The terms of this ordinance are quite clear. Any landlord with a vacant apartment must notify the Rent Levelling Board within 30 days; if he does not obtain a waiver, and the apartment remains vacant for 60 days, he may be fined. As yet, there is no vagueness here. If "concrete problems of constitutional dimension" appear in the future, "it will be time enough to consider them when they arise." *Joseph E. Seagram & Sons, Inc. v. Hostetler*, 384 U.S. 35, 52, 86 S.Ct. 1254, 1265, 16 L.Ed.2d 336 (1966).

### The Eighth Amendment Claim

■ Plaintiff alleges that the penalties enacted by the ordinance violate the eighth amendment. Eighth amendment scrutiny, however, is not appropriately applied to a civil ordinance such as this. Eighth amendment protections apply only after a finding of guilt in a criminal prosecution comporting with due process. When punishment for a criminal violation is not at issue, the Due Process Clause of the fourteenth amendment is "the pertinent constitutional guarantee." *Ingraham v. Wright*, 430 U.S. 651, 671, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977). As there is no allegation that the plaintiff has been subjected to a finding of guilt pursuant to due criminal process, this case presents no eighth amendment issue.

### The Federal Antitrust Claim

■ The plaintiff claims that
The ordinance constitutes an unwarranted and unlawful intrusion into areas preemptively regulated by the Congress of the United States, in particular with regard to the Antitrust Laws, 15 U.S.C. § 1 and following.

Taken literally, this claim is incomprehensible. Congress, through the enactment of the antitrust laws, cannot be said to have brought residential land use regulation preemptively within the federal ambit.

It becomes clear upon reading plaintiff's brief, however, that plaintiff intended to allege that the ordinance violates the antitrust laws.

The only law specifically cited is section 1 of the Sherman Act, 15 U.S.C. § 1. That section prohibits combinations in restraint of trade. In *Fisher v. City of Berkely*, —— U.S. ——, 106 S.Ct. 1045, 1047, 89 L.Ed.2d 206 (1986), the Supreme Court held that municipal rent regulation, without an allegation of combination or conspiracy between two or more parties, does not violate section 1. As plaintiff alleges no combination and no co-conspirator, its complaint states no section 1 claim.

As for the other "Antitrust Laws," it is not sufficient simply to allege a violation of any or all of them. Notice pleading does not require much in the way of specificity but it does demand more than this. *Northland Equities v. Gateway Construction Corporation*, 441 F.Supp. 259, 264 (E.D.Pa. 1977).

### The State Law Claims

■ The State of New Jersey has enacted a large number of laws regulating landlord-tenant relations. Plaintiff argues that these laws preempt the city's ordinance.

Municipalities are creatures of the state, and questions concerning the relative powers of the two levels of government are questions uniquely of state law.

Because there are no federal questions remaining in this suit, the Court is free to decline to take pendant jurisdiction over these state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Concerns of comity strongly militate against this Court's injecting itself into a disagreement over the allocation of power between state and local governments. State courts are the appropriate forum for this dispute. Under *Gibbs*, therefore, the state claims will be dismissed.

In accordance with this opinion, the complaint of plaintiff will be dismissed in its entirety.