**CROW–NEW JERSEY 32 LIMITED PARTNERSHIP and Crow–Central Office, Inc., Plaintiffs,**

v.

**TOWNSHIP OF CLINTON, Defendant.**

**Civ. A. No. 89–0234 (JCL).**

United States District Court,
D. New Jersey.

July 28, 1989.

A. Dennis Terrell, Elizabeth S. Soriano, Shanley & Fisher, P.C., Morristown, N.J., for plaintiffs.

David Vaida, Vaida & Vaida, Flemington, N.J., for defendant.

## OPINION

LIFLAND, District Judge.

Plaintiffs are developers who own property in the Township of Clinton, New Jersey. They seek a judgment setting aside and declaring null and void a land use ordinance. Jurisdiction is predicated upon 28 U.S.C. § 1331.

Plaintiffs claim that the ordinance violates federal and state constitutional rights and that the ordinance is preempted by and inconsistent with legislation enacted by the State of New Jersey.

Presently before the court is a motion by plaintiffs for summary judgment. The

Township of Clinton has moved to dismiss the complaint, arguing that the dispute is not ripe for adjudication or otherwise justiciable. Having heard oral argument and having reviewed the moving papers, this court grants plaintiffs' motion and denies defendant's motion.

## I. FACTUAL BACKGROUND

Plaintiffs own approximately 35.5 acres in the township. Before passage of Ordinance # 386–88, the allowable floor area ratio [1] for building was 15%, resulting in a maximum permitted floor area of 231,968 square feet. Further, the allowable impervious coverage [2] was 33%, or 510,330 square feet.

Ordinance # 386–88 was duly adopted by the Township of Clinton on October 12, 1988. Section 1 of the ordinance requires developers to obtain certain documentation from either a state or federal agency. Section 2 reduces the permissible area available for development on properties containing "critical areas." These areas include:

stream corridors, wetlands, slopes greater than twelve percent (12%), highly erodible soils, areas of high water table, mature stands of native vegetation, aquifer recharge and discharge areas and other environmentally sensitive features, areas or conditions not addressed elsewhere in the EIS [Environmental Impact Statement].

Clinton, N.J. ch. 72, § 72–68C(3)(1), as amended (1988).

Ordinance # 386–88 reduced development potential of the site by excluding the aforementioned "critical areas" from the area of the property used for calculating the floor area ratio and allowable impervious coverage. Defendant does not dispute the plaintiffs' expert's affidavit to the effect that the total amount of "critical areas" (consisting of wetlands, flood plain and slope constraint) consist of 9.287 acres, and that Ordinance # 386–88 thus reduces the allowable building size by 60,682 square feet and the allowable impervious coverage by 133,-499 square feet.

Plaintiffs move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on the grounds that Ordinance # 386–88 1) effects a taking without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution; 2) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the New Jersey Constitution; 3) is preempted by the New Jersey Freshwater Wetlands Protection Act, *N.J.S.A.* 13:9B–1 *et seq;* and 4) is preempted by and is inconsistent with the New Jersey Municipal Land Use Law, *N.J.S.A.* 40:55D–1 *et seq.*

Regarding plaintiffs' claim that the ordinance is inconsistent with the New Jersey Municipal Land Use Law, the Superior Court of New Jersey has entered an order voiding Section 2 (the floor area ratio provision) on the ground that the township exceeded its statutory authority. *Clinton Hills Corporate Center v. Township of Clinton*, Hunterdon County # W–506–89 (Law Div.1989). Thus, this court is obligated to address the issue of mootness as a threshold matter. *See Rogin v. Bensalem Township*, 616 F.2d 680 (3d Cir.1980), *cert. denied sub nom. Mark–Garner Associates v. Bensalem Township*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

## II. MOOTNESS

■ "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), *citing Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). Further, a case may become moot if (1) "it can be said with assurance that there is no reasonable expectation ... that the alleged violation will recur" and (2) "interim relief or events have completely and irrevocably

---

**1.** "Floor area ratio" is defined as "the sum of the area of all floors of buildings or structures compared to the total area of the site. *N.J.S.A.* 40:55D–4.

**2.** "Impervious coverage" includes, but is not limited to, parking lots, loading areas, and marginal access roads and roadways. *See N.J.S.A.* 40:55D–65.

eradicated the effects of the alleged violation." *County of Los Angeles v. Davis,* 440 U.S. at 631, 99 S.Ct. at 1383.

■ As noted, the state court has voided the floor area ratio provision of Ordinance #386–88. The issues presented to the state court did not include federal constitutional claims, preemption issues under the New Jersey Freshwater Wetlands Protection Act, or state constitutional claims. Thus, the state court's relief cannot be said to have "completely eradicated" the effects of the alleged violation. *Rogin v. Bensalem Township,* 616 F.2d at 684–685. Nor can it be said that there has been an "irrevocable eradication" since the state law issues are subject to appeal. *Id.* Finally, inasmuch as the state court decided only questions of state law, there is no assurance that the federal constitutional violations will not recur. "In short, there are present here 'live' federal constitutional issues that have not been adjudicated in any other court." *Id.* at 685. Accordingly, this court holds that the case is not moot.

III. RIPENESS

■ The township has moved to dismiss plaintiffs' complaint. It argues that the federal constitutional challenge to Ordinance #386–88 is not ripe because plaintiffs have failed to submit a development plan to the planning board or seek a variance or otherwise seek compensation through available state court remedies. This court denies the township's motion for the following reasons.

As noted, plaintiffs allege that the ordinance violates the Fifth and Fourteenth Amendments to the United States Constitution because it effects a taking without just compensation. The ordinance does not contemplate the township's physical occupation of property. Instead, it reduces the development potential of the site. Since plaintiffs have not submitted a development plan nor sought a variance, the ordinance has never been enforced against them. Thus, plaintiffs' takings claims amount to what the United States Supreme Court has called a "facial challenge" to the ordinance.

In *Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1979), the Supreme Court addressed the issue of whether a municipal zoning ordinance took certain property without just compensation in violation of the Fifth and Fourteenth Amendments. The Supreme Court noted that "[b]ecause the [property owners] have not submitted a plan for development of their property …, there is as yet no concrete controversy regarding the application of the specific zoning provisions. Thus, the only question properly before [the court] is whether the mere enactment of the zoning ordinance constituted a taking." *Id.* at 260, 100 S.Ct. at 2141. The Court went on to hold that the ordinance withstood this facial challenge because it substantially advanced a legitimate governmental interest. *Id.* at 261, 100 S.Ct. at 2141.

In *Hodel v. Virginia Surface Mining & Reclamation Assoc.,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981), the Supreme Court distinguished a facial challenge to the Surface Mining Act from an actual taking challenge involving a specific piece of property. "Because … the taking claim arose in the context of a facial challenge", the court found that "it presented no concrete controversy concerning the application of the Act to particular surface mining operations or its effect on a specific parcel of land. Thus, the only issue before the District Court … was whether the 'mere enactment' of the [Act] constitutes a taking." *Id.* at 295, 101 S.Ct. at 2370. The Court thus adjudicated the facial challenge to the Surface Mining Act and held that "the Act does not, on its face, prevent beneficial use of coal-bearing lands." *Id.* at 296–297, n. 37, 101 S.Ct. at 2370–2371, n. 37.

Also, in *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987), the Supreme Court noted that:

The posture of [a taking] case is critical because we have recognized an important distinction between a claim that the mere enactment of a statute constitutes a taking and a claim that the particular impact of government action on a specif-

ic piece of property requires the payment of just compensation.

Thus, the Supreme Court in *Agins, Hodel* and *Keystone Bituminous Coal Ass'n* has not refused to address facial challenges made pursuant to the Fifth and Fourteenth Amendments on the ground that they were not ripe.

The township nevertheless argues that plaintiff's taking claims are not ripe because they have failed to obtain a final decision regarding the application of the ordinance to their land and have failed to utilize the remedies the State of New Jersey provides for obtaining just compensation. The township relies on *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

> [A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.

*Williamson,* 473 U.S. at 186, 105 S.Ct. at 3116.

In *Williamson,* a developer obtained approval from the local planning commission of a preliminary plat for development of a tract of land, in accordance with the requirements of a zoning ordinance for "cluster" development. After construction of some units, the ordinance was changed so as to reduce the allowable density of the remaining units. Based upon the amended ordinance, the commission disapproved plats for further development. The developer filed an action in federal district court pursuant to 42 U.S.C. § 1983, alleging that the commission had taken his property without just compensation.

The developer had submitted a development plan but did not seek a variance. Noting that Fifth and Fourteenth Amendment taking claims are based primarily upon the economic impact of government regulations, the Supreme Court found that economic factors "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Id.* at 191, 105 S.Ct. at 3119.

Further, "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process 'yields just compensation' then the property owner 'has no claim against the Government for taking'." *Id.* at 194–195, 105 S.Ct. at 3121, *citing Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1013, 1018, 104 S.Ct. 2862, 2878, 2880, 81 L.Ed.2d 815 (1984). As the township points out, plaintiffs have not submitted a development plan to the planning board nor have they applied for a variance. Thus, there is no final decision regarding how the ordinance will be applied to plaintiffs' property.

However, the township's reliance upon *Williamson* is misplaced. In that case the Supreme Court was reviewing a jury verdict awarding money damages to compensate for an unconstitutional taking, and the Supreme Court was obviously concerned about upholding a damage award under 42 U.S.C. § 1983 when plaintiff developer had not even sought a variance which might have eliminated or limited the monetary harm to him. In contrast, plaintiffs herein do not challenge the "application" of Ordinance # 386–88. Their challenge is "facial". Plaintiffs allege, among other things, that the mere enactment of the ordinance is unconstitutional. "[This] posture of the case is critical because [the Supreme Court] has recognized an important distinction between a claim that the mere enactment of a statute constitutes a taking and a claim that a particular impact of government action on a specific piece of property requires the payment of just compensation." *Keystone Bituminous Coal Assn. v. DeBenedictis,* 480 U.S. at 494, 107 S.Ct. at 1247 (relying upon *Hodel v. Virginia Surface Mining, supra.*); *See also Pennell v. Tri–County Apartment House Owners Ass'n,* 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988).[3]

---

**3.** *Pennell* rejected a Takings Clause challenge as premature but the majority did not characterize

Accordingly, this court finds that a facial challenge to Ordinance # 386–88 pursuant to the Fifth and Fourteenth Amendments is ripe for adjudication.

## IV. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be granted when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding whether an issue of material fact exists, the court is required to view all doubt in favor of the non-moving party. *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 (3d Cir.1983), *cert. denied* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## V. THE FIFTH AND FOURTEENTH AMENDMENT CLAIMS

### A. The Taking Claim

The Fifth and Fourteenth Amendments to the United States Constitution prohibit government from taking private property without just compensation. *U.S. Constitution,* Amend. 5, 14; *Chicago, B. & Q.R. Co. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897) (Fifth Amendment applicable to the states). The relationship between the police power of government which is the power to regulate for the public benefit, and the constitutional prohibition against taking property without just compensation, presents the primary problem in understanding the limits of governmental power to regulate the use of land. *See Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); *Keystone Bituminous Coal Ass'n v. DeBenedictis, supra.*

The determination that governmental action constitutes a taking is, in essence a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest. Although no precise rule determines when property has been taken, the question necessarily requires a weighing of private and public interests.

*Agins v. Tiburon,* 447 U.S. at 260–261, 100 S.Ct. at 2141. (citations omitted).

"The test to be applied in considering this facial challenge is straightforward. A statute regulating the uses that can be made of property effects a taking if it 'denies an owner economically viable use of his land.'" *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. at 495, 107 S.Ct. at 1247, citing *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. at 294–296, 101 S.Ct. at 2369–2370. However, plaintiffs face an "uphill battle" in making a facial challenge to the ordinance as a taking. *Id.* 480 U.S. at 495, 107 S.Ct. at 1247.

Plaintiffs claim that the ordinance substantially limits the extent to which they may reasonably develop their property and thus deprives them of its full economic potential. Although the loss of future profits has been called a "slender reed upon which to rest a takings claim," *Andrus v. Allard,* 444 U.S. 51, 66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979), it may be that the loss of an expectation interest may be a predicate for a takings claim even in the absence of a claim of economic non-viability. *Williamson County Regional Planning Commission,* 473 U.S. at 191, n. 12, 105 S.Ct. at 3119, n. 12. However, *Williamson* makes it clear "that such a claim is fraught with the difficulty of determining whether the reduced expectation rises to the level of a taking." *Help Hoboken Housing v. City of Hoboken,* 650 F.Supp. 793, 798 (D.N.J.1986).

■ However, this court need not decide whether the ordinance deprives plaintiffs

the challenge either as "facial" or as an "as-applied" challenge. Justices Scalia and O'Connor, concurring in part and dissenting in part, characterized the challenge as facial. It is unclear whether or not the majority intended to address the matter as a facial challenge.

of actual profits or an expectation of future profits because the mere diminution in the value of land caused by government restrictions does not constitute a taking. *First English Evangelical Lutheran Church v. Los Angeles County,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *See also Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

Plaintiffs have not at this stage of the proceedings met their burden of showing that Ordinance # 386–88 has deprived them of economically viable use, real or expected, of their property. Plaintiffs' expert states that "the reduction in allowable building size due to the [ordinance] is 60,-682 square feet." This leaves plaintiffs the opportunity to construct 171,286 square feet of office space and an adjacent parking lot of 376,831 square feet. Therefore, plaintiffs' motion for summary judgment on the Fifth Amendment challenge to the ordinance is denied.

### B. Substantive Due Process

■ A land use regulation violates the Due Process Clause of the Fourteenth Amendment if it does not substantially advance legitimate governmental interests. *Keystone Bituminous Coal Association v. DeBenedictis,* 480 U.S. at 471–472, 107 S.Ct. at 1235–1236, citing *Agins v. Tiburon,* 447 U.S. at 260, 100 S.Ct. at 2141; *See also United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985).

■ Plaintiffs have conceded that regulating the use of freshwater wetlands and other critical areas may be a legitimate exercise of the township's police power. Indeed, federal and state courts have consistently recognized that the protection and maintenance of wetlands is a proper exercise of governmental authority. *United States v. Cumberland Farms of Connecticut, Inc.,* 826 F.2d 1151 (1st Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1016, 98 L.Ed.2d 981 (1988); *Bersani v. EPA,* 674 F.Supp. 405 (N.D.N.Y.1987); *Sands Point Harbor, Inc. v. Sullivan,* 136 N.J.Super. 436, 346 A.2d 612 (App.Div.1975); *In re Loveladies Harbor, Inc.,* 176 N.J.Super. 69, 422 A.2d 107 (App.Div.1980). However, plaintiffs contend that Section 2 of the ordinance does not substantially advance the township's interest in protecting and maintaining ecologically sensitive areas because it arbitrarily reduces the permissible floor area and impervious coverage area. In essence, plaintiffs argue that regulating the use of property based upon the "mere presence" of ecologically sensitive areas on a site is unreasonable and arbitrary when the proposed development has no impact on those ecologically sensitive areas.

The test that this court must apply is whether there is a nexus between the ordinance's requirements and the township's goal of protecting and maintaining the integrity of freshwater wetlands and other critical areas. *See Nollan v. California Coastal Commission,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). After carefully reviewing the entire record, this court finds that the facts of record are insufficient at this time to grant summary judgment on this issue.

Approximately 9.287 acres of the 35.5 acre site represent "critical areas". While it may be true that a land use regulation that restricts the actual impact of development upon critical areas, rather than restricting development because of the mere presence of critical areas on parts of the property which are not to be developed, may be a better way to advance the township's interest, it is too soon to say that the Due Process Clause compels this court to second-guess the local governing authority. *See Agins v. Tiburon, supra.* Moreover, plaintiffs' entire basis for its arbitrariness argument is the testimony of its expert, who states that "None of the proposed construction will interfere, impinge or impact on the wetlands or flood plains on the site." There is simply not enough in the record at this time to support the conclusory remark made by plaintiffs' expert that critical areas will not be impacted. Plaintiffs' evidence at this time is simply not "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. at 251–252, 106 S.Ct. at 2512. Therefore, this court will deny plaintiffs'

motion for summary judgment on the Due Process challenge to Section 2 of the ordinance.

## VI. STATE LAW CLAIMS

This court may exercise pendent jurisdiction over the remaining state law claims in this case. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In doing so, this court must apply the law of New Jersey. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "Although some have characterized this assignment as speculative or crystal-ball gazing, nonetheless, it is a task which this court may not decline." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.1980), *cert. denied* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

### A. The New Jersey Constitution

The New Jersey Constitution prohibits excessive regulation of the use of land. Art. I, ¶ 1. In a state where the pressures for commercial and residential development have defined the pace and pattern of land use, the courts of New Jersey have frequently been called upon to apply state constitutional law to land use disputes. *South Burlington County N.A.A.C.P. v. Township of Mount Laurel*, 67 N.J. 151, 336 A.2d 713 (1975), *cert. denied*, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (*Mt. Laurel I*).

Land use regulations should take into account ecological and environmental concerns. *Id.* 67 N.J. at 196–197, 336 A.2d 713. Yet, these regulations cannot be used to thwart growth. *Id.* "[T]he zoning of property into idleness by restraint against all reasonable use would be invalid as confiscatory and would amount to a taking without compensation." *AMG Associates v. Township of Springfield*, 65 N.J. 101, 102, 319 A.2d 705 (1974). As previously discussed, plaintiffs have not on the record to date made a sufficient showing that the ordinance deprives them of a reasonably profitable use of their property. *See Littman v. Gimello*, 115 N.J. 154, 557 A.2d 314 (1989) (Diminution of market value of land

does not constitute a compensable taking); *Albano v. Township of Washington*, 194 N.J.Super. 265, 476 A.2d 852 (App.Div. 1984) (A restriction on the use of land may not be invalidated simply because developer cannot make a profit). Accordingly, plaintiffs' motion for summary judgment challenging Ordinance # 386–88 under the New Jersey Constitution is denied.

### B. State Preemption of Local Ordinance

In addition to limiting the floor area and the area of impervious coverage on proposed development, Section 1 of Ordinance # 386–88 provides:

> If one or more indications of wetlands are present, a wetlands report and delineation shall be prepared by a qualified professional, and submitted to the [Planning] Board as a part of the EIS. If the wetlands report and delineation demonstrates that there are wetlands pursuant to the three-parameter approach, the EIS shall include a letter of interpretation from the Freshwater Wetlands Section, Division of Coastal Resources, N.J. Department of Environmental Protection, or a letter of confirmation or a nationwide permit from the U.S. Army Corps of Engineers, consistent with the provisions of the N.J. Freshwater Wetlands Protection Act (*N.J.S.A.* 13:9B–1 *et seq.*).

Plaintiffs argue that the New Jersey Freshwater Wetlands Protection Act, (herein "Act"), *N.J.S.A.* 13:9B–1 *et seq.*, preempts Ordinance # 386–88 and therefore the ordinance is null and void.

To find preemption of a municipal ordinance by a state statute, it is not enough to show merely that the legislature has legislated upon a particular subject. *Parsippany Hills Associates v. Rent Leveling Board of Parsippany–Troy Hills Township*, 194 N.J.Super. 34, 476 A.2d 271 (App.Div.1984). Rather, in order to support such a finding, the legislative intent to supersede local powers must clearly be present. *United Bldg. and Const. Trades Council v. City of Camden*, 88 N.J. 317, 443 A.2d 148 (1982). The Supreme Court of New Jersey has established the follow-

ing guidelines for deciding whether a state statute preempts a local ordinance:

1) Does the ordinance conflict with state law either because of conflicting policies or operational effect;

2) Was state law intended, expressly or implicitly, to be exclusive in the field;

3) Does the subject matter reflect the need for uniformity;

4) Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulations; and

5) Does the ordinance stand as an obstacle to accomplishment and execution of full purposes and objectives of the legislature.

*Overlook Terrace Management Corp. v. Rent Control Board of West New York*, 71 N.J. 451, 366 A.2d 321 (1976).

The Act was passed in 1987 as a response to Executive Order 175 which had declared an immediate moratorium on state processing of permits authorizing development in freshwater wetlands, including stream encroachment and flood control permits. *See generally* English & Sarno, "The Freshwater Wetlands Protection Act: Give and "Take" in New Jersey" 12 *Seton Hall Legis. J.* 249 (1989). The purpose of the Order was to protect, preserve and maintain the integrity of freshwater wetlands. *Id.* It did not expressly limit the authority of local governments to adopt their own ordinances. Indeed, the Order declared that:

All municipalities and counties in this State are requested and encouraged to make all of their actions consistent with the intent, goals and objectives of this Executive Order.

Ex.Ord. 175, ¶ 12.

The intent of the Act is to preserve the "purity and integrity of freshwater wetlands from random, unnecessary or undesirable alteration or disturbance." *N.J. S.A.* 13:9B–2. Generally, the Act imposes strict regulation of activities in freshwater wetlands by authorizing a state takeover of the federal freshwater wetlands program and by creating a new permit program. The Act defines "regulated activity" as

(1) The removal, excavation, disturbance or dredging of soil, sand, gravel or aggregate material of any kind;

(2) The drainage or disturbance of the water level or water table;

(3) The dumping, discharging or filling with any materials;

(4) The driving of pilings;

(5) The placing of obstructions; and

(6) The destruction of plant life which would alter the character of a freshwater wetland, including cutting of trees.

*N.J.S.A.* 13:9B–3.

Regulations were promulgated and issued by the New Jersey Department of Environmental Protection (herein "NJDEP") in June, 1988. *N.J.A.C.* 7:7A–1 *et seq.* The principal feature of these regulations is the establishment of two new permit programs that strictly curtail activities in freshwater wetlands and regulate the discharge of dredged or fill material. *Id.* Responsibility for administering the program rests with the Division of Coastal Resources in the NJDEP. The regulations affect approximately 300,000 acres of freshwater wetlands in New Jersey. English and Sarno, *supra.*

In identifying a wetland, the NJDEP uses a three-parameter approach—hydrology, soils and vegetation. *N.J.A.C.* 7:7A–1.- 4. Further, a developer who proposes to engage in a regulated activity may request from the NJDEP a letter of interpretation "to establish that the site of the proposed activity is located in a freshwater wetland." *N.J.S.A.* 13:9B–8.

Ordinances of the type challenged here are authorized by the Municipal Land Use Law (herein "Land Use Law"), *N.J.S.A.* 40:55D–1 *et seq.*, which enables municipalities to adopt reasonable zoning ordinances to preserve environmentally sensitive land. *Sheerr v. Evesham Township*, 184 N.J.Super. 11, 445 A.2d 46 (Law Div.1982); *Sporkin v. Stafford Township*, 227 N.J.Super. 569, 548 A.2d 218 (App.Div.1988). Also, the Land Use Law enables municipalities to adopt "floor area ratios and other ratios and regulatory techniques governing the

intensity of land." *N.J.S.A.* 40:55D–65(b). The New Jersey Legislature was aware of the Land Use Law when it adopted the Act, whose preemption clause provides:

It is the intent of the Legislature that the program established by this act for the regulation of freshwater wetlands constitutes the only program for this regulation ... To this end no municipality, county or political subdivision thereof shall enact, subsequent to [July 1, 1988], any law, ordinance, or rules or regulations regulating wetlands ...

*N.J.S.A.* 13:9B–30.

As noted, Ordinance # 386–88 was adopted subsequently, in August, 1988. The inquiry of this court will be in accordance with the guidelines set forth in *Overlook Terrace Management Corp. v. Rent Control Board of West New York, supra.*

It is clear that as to Section 2 there is no conflict between the Act's and the ordinance's policy and operational effect. Both define freshwater wetlands using the three-parameter approach and both seek to preserve the integrity of wetlands. The state has chosen to advance its policy by regulating the placement of landfill and obstructions in wetlands, as well as dredging, removal of vegetation and the alteration of drainage patterns. The township has chosen to regulate floor area and impervious coverage area. While the State of New Jersey clearly has preempted local ordinances that regulate activity affecting freshwater wetlands (*N.J.S.A.* 13:9B–30), the state has clearly defined those activities in *N.J.S.A.* 13:9B–3. These activities do not include development outside of the wetlands area and the Act does not limit floor area or impervious coverage area. To this extent, both the Act and Section 2 of the ordinance coexist without significant conflict. For essentially the same reasons, the remaining *Overlook Terrace* factors point away from preemption, at least on the present record. The precise definition of "regulated activity," quoted above, in *N.J.S.A.* 13:9B–3 does not indicate an intent that the Act be exclusive as to activity not included within that definition. No need for uniformity is apparent, by definition,

when different activities are regulated. The precise definition of "regulated activity" belies a pervasive or comprehensive scheme, and the ordinance does not stand in the way of the Act's legislative objectives.

As to Section 1 of the ordinance, the result is not clear. The Act represents a comprehensive approach to regulating certain activities in freshwater wetlands. *N.J. S.A.* 13:9B–2. As a part of this approach, developers may ask the NJDEP for a letter of interpretation to determine the existence and quality of wetlands and whether the proposed development will have an adverse effect upon them. While the Act permits a developer to make such a request, Section 1 of Ordinance # 386–88 provides that a developer "shall" include the letter of interpretation as a part of the EIS. Therefore, the issue is whether this requirement contained in Section 1 of the ordinance represents a conflict with state policy or operational effect.

The township explains that a developer has the option to obtain a letter of interpretation from the NJDEP, *or* a confirmation letter or a nationwide permit from the U.S. Army Corps of Engineers. (emphasis added). "Thus, the premise on which plaintiff bases its argument disappears as the letter of interpretation is not mandatory." *Township Brief* at 16. However, defendant's argument is flawed because a primary feature of the Act is the authorization of a state takeover of the federal wetlands program. This authorization is central to understanding the comprehensive nature of the Act. The federal program has been merged into a comprehensive state program authorizing the NJDEP to act as the sole regulatory agency. Under these circumstances, plaintiffs argue convincingly that the suggested alternatives of a "confirmation letter or a nationwide permit from the U.S. Army Corps of Engineers" are illusory; under Section 1 developers *must* obtain a letter of interpretation from the NJDEP. Accordingly, plaintiffs argue that Section 1 of the ordinance is in conflict with the state's regulatory scheme, which gives developers *an option* to request such a letter. Were the record fuller

and the court convinced that developers generally would proceed without such a letter from the NJDEP, the court would declare Section 1 preempted. However, if developers routinely seek such a letter, the permissive/mandatory conflict is not meaningful and there would be no conflict in policy or operational effect between the Act and the ordinance. This factual gap in the present record makes it impossible to resolve the other *Overlook Terrace* factors as well and points to denial of summary judgment as to Section 1 of the ordinance at this time.

Accordingly, this court cannot at this time find that either Section 1 or Section 2 of Ordinance # 386–88 is preempted by the New Jersey Freshwater Wetlands Protection Act, and denies summary judgment in favor of plaintiffs on this issue.

## VII.  INCONSISTENCY WITH ENABLING STATE LAW

The remaining issue for this court to decide is whether Section 2 of the ordinance is null and void because it is inconsistent with its enabling law, the Municipal Land Use Law. This court finds that Section 2 is null and void for the following reasons.

The Municipal Land Use Law, *N.J.S.A.* 40:55D–1, *et seq.*, was adopted to simplify and standardize zoning and planning procedures throughout the State of New Jersey. *Accardi v. North Wildwood,* 145 N.J.Super. 532, 368 A.2d 416 (Law Div.1976). The Land Use Law's primary purpose is to encourage municipalities to develop their land use policies in a more efficient and standardized manner. *Levin v. Parsippany–Troy Hills Township,* 82 N.J. 174, 411 A.2d 704 (1980). The Land Use Law accomplishes this by providing a vehicle for the state's delegation of its police power to the municipalities. *Id.* In exercising its zoning power, a municipality must act with its delegated powers and cannot go beyond them. *Pop Realty Corp. v. Springfield Board of Adjustment of Springfield Township,* 176 N.J.Super. 441, 423 A.2d 688 (Law Div.1980). Thus, a municipality has no inherent power to adopt a zoning

ordinance and may act only by virtue of a statutory grant of authority from the state legislature. *Dresner v. Carrara,* 69 N.J. 237, 353 A.2d 505 (1976).

The Land Use Law enables the Township of Clinton to adopt "floor area ratios and other ratios and regulatory techniques governing the intensity of land use ..." *N.J.S.A.* 40:55D–65(b). "Floor area ratio" is defined as "the sum of the area of all floors of buildings or structures compared to the *total area of the site.*" *N.J.S.A.* 40:55D–4 (emphasis added). In contrast, Ordinance # 386–88 calculates the floor area ratio by comparing floor area with the total area of the site *minus* the "critical areas". By defining "floor area ratio" in the ordinance differently than it is defined in the enabling statute, the township has clearly gone beyond its statutory grant of power. This court must be guided by, and totally agrees with, the decision of Judge Bernhard of the Superior Court of New Jersey on this precise issue. Judge Bernhard decided, as this court does, that Section 2 of Ordinance # 386–88 is null and void. Accordingly, summary judgment will be granted in favor of plaintiffs on this issue.

## VIII.  CONCLUSION

In summary, this court denies summary judgment as to the claims that Ordinance # 386–88 violates the federal or state constitutions, and as to the claims that it is preempted by the New Jersey Freshwater Wetlands Protection Act. Summary judgment is granted as to the claim that Section 2 is inconsistent with the Municipal Land Use Law. Defendant's motion to dismiss the complaint is denied.

An order accompanies this opinion.

## ORDER

This matter is before the Court on plaintiffs' motion for summary judgment and defendant's motion to dismiss the complaint. Having reviewed the moving papers and having heard oral argument, and for the reasons set forth in the accompanying Opinion;

IT IS on this 28th day of July, 1989, ORDERED that this court denies summary judgment as to the claims that Ordinance # 386–88 violates the federal or state constitutions and as to the claims that it is preempted by the New Jersey Freshwater Wetlands Protection Act;

IT IS FURTHER ORDERED that summary judgment is granted as to the claim that Section 2 of Ordinance # 386–88 is inconsistent with the Municipal Land Use Law; and

IT IS FURTHER ORDERED that defendant's motion to dismiss the complaint is denied.