194 N.J. Super. 265 (1984)
476 A.2d 852
ANTHONY ALBANO, HENRY MONETTI, AND SIGNE MASCERA, PLAINTIFFS-APPELLANTS,
v.
MAYOR AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF WASHINGTON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1984.
Decided May 8, 1984.
*267 Before Judges ARD, MORTON I. GREENBERG and TRAUTWEIN.
Richard J. Driver argued the cause for appellants (Brach, Eichler, Rosenberg, Silver, Bernstein & Hammer, attorneys).
*268 Alfred S. Villoresi argued the cause for respondent (Villoresi & Jansen, attorneys; Joan A. Bedrin, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
This matter comes on before this court on appeal in a land use zoning case. The protracted proceedings require that the facts and procedural background of the case be set forth at length.
The action involves a 148-acre parcel of undeveloped land owned by plaintiffs Anthony Albano, Henry Monetti and Signe Mascera in Washington Township, Morris County. The land is sloping and wooded but a portion is cleared for farming though not currently so used. Critically to the case, there are five streams which flow through the parcel, four of which meet to form Electric Brook which flows through the center of the property. The fifth stream joins Electric Brook at a point immediately southeast of plaintiffs' land. Electric Brook is the sole feeder of Lake George, located in Schooley's Mountain Park southeast of the property. The lake and the park are administered by the Morris County Park Commission.
Prior to January 1, 1979 plaintiffs' property and the area surrounding it except Schooley's Mountain Park were zoned R-1, a district in which one residential unit per acre could be constructed. Much of the property surrounding the parcel has been developed so that it is surrounded on three sides by residential housing developments, portions of which are not completed.
In 1977 a proposed purchaser from plaintiff applied to the Washington Township Planning Board for a preliminary subdivision approval for the property. As a result of a lack of coordination between the planning board and the Washington Township Municipal Utilities Authority (MUA), no action was taken on the application. The planning board refused to pass on the application until the property was approved by the MUA *269 for a sewerage allotment while the MUA would not act until the application was considered by the planning board. It appears, therefore, that the purchase was not completed.
On January 1, 1979 as a consequence of the polluting of Lake George caused by development of nearby property, 143 acres of plaintiffs' property were rezoned from R-1 to R-3. This zoning required three acres for each residential unit. The planning board believed that plaintiffs' property was unique in its effect upon Lake George because of the streams within it. But this amendatory zoning ordinance was not applicable to the surrounding property which was largely developed. In these areas one-acre lots were allowed in sewered areas and two acres were required where septic tanks were in use.
On May 17, 1979 plaintiffs filed this action against Washington Township challenging the validity of the new zoning ordinance. They alleged that the ordinance was arbitrary, capricious and unreasonable and there was no valid basis to support the rezoning of their land. They further asserted that the ordinance did not take into account that Washington Township was a developing community obligated to provide low cost housing pursuant to So. Burl. Cty. N.A.A.C.P. v. Tp. of Mount Laurel, 67 N.J. 151 (1975), cert. den. and app. dism. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mt. Laurel I). On April 28, 1980 an order was entered declaring the ordinance invalid because of a defect in the procedure by which it was adopted. The order gave defendant 60 days within which to enact a new ordinance. Further, defendant was directed to notify plaintiffs of any meeting at which the ordinance would be discussed.
On June 24, 1980 defendant's governing body, the township committee, without notice to plaintiffs adopted a new zoning ordinance. In light of defendant's failure to give plaintiffs notice, plaintiffs filed a motion for enforcement of litigants' rights seeking to have the new ordinance invalidated. On October 9, 1980 the court invalidated the zoning ordinance. However by a later order of December 19, 1980, the October 9 *270 order was amended to limit the invalidation to plaintiffs' property. The judge permitted defendant 90 days within which to enact a valid zoning ordinance covering plaintiffs' property and provided that if plaintiffs remained dissatisfied with the new ordinance, the matter would be set down for trial. On December 15, 1980 defendant enacted an ordinance reinstating the R-3 three-acre zoning for plaintiffs' property.
While plaintiffs' action was pending another property owner filed an action entitled Claremont Painting & Decorating Co. v. Tp. of Washington, docket no. L-24425-78 P.W., challenging the zoning in Washington Township with respect to its property on Mt. Laurel grounds and on the basis of specific grounds relating to its property. On June 12, 1981 the court, on its own initiative, consolidated this action and the Claremont case with respect to the common issues of law and fact under Mt. Laurel. Consequently this action was bifurcated with the consolidated Mt. Laurel issues to be tried first and the issues with specific reference to plaintiffs' property held for a later date.
On September 25, 1981 the Morris County Park Commission filed a motion to intervene as a party defendant in the second phase of this action. The commission conceived itself to be interested because the development of plaintiffs' property could impact on Lake George. Specifically the commission contended that high density zoning could result in pollution of the lake. On October 8, 1981 an order was entered allowing the intervention.
After a lengthy trial of the consolidated Mt. Laurel issues, Judge Gascoyne on May 24, 1982 decided the case in an oral opinion. Although the judge found that Washington Township was a developing community which had not met its Mt. Laurel obligations, he did not invalidate the zoning ordinance directly on this ground. Instead, he found the ordinance defective because it did not permit a reasonable variety of housing. Nevertheless, he permitted the ordinance to remain in effect until the completion of the second phases of this case and the *271 Claremont action. On June 7, 1982 the judge signed an order incorporating his oral decision findings.
On September 27, 1982 trial of the second phase of this action started before Judge Gascoyne. At the outset plaintiffs and the commission informed the judge that they had reached a tentative settlement of their dispute. This tentative settlement was finalized in an October 21, 1982 agreement enabling plaintiffs without opposition from the commission to develop their property at one unit per acre provided they followed certain specified environmental safeguards. This settlement, however, did not affect the litigation between plaintiffs and Washington Township.
At the trial plaintiffs sought to prove that the property had been zoned into inutility due to discriminatory and over-burden-some zoning regulations. Alan R. Kemp, Jr., a professional planner, stated that the streams flowing the property did not impede a greater but environmentally sound development density than allowed in the ordinance. He testified that the environmental sensitivity of the property could be protected in ways other than restricting high density zoning by safeguards already contained in defendant's zoning ordinance. He maintained that plaintiffs' property was similar to the surrounding property and should be developed at the same density as the surrounding property.
Sylvester J. Fletcher, a soil scientist, obtained and analyzed soil samples from plaintiffs' property and the surrounding area. He stated that the soils were similar and the soil from plaintiffs' property was not particularly wet and did not collect and retain water. Thus he concluded that the soil would not preclude construction on the property. Fletcher's opinions and conclusions were shared by Kemp and David B. Keller, a civil engineer, surveyor and professional planner. Keller also testified that development of the property at a greater density would not adversely affect the streams flowing the property. He stated that the engineering constraints on the subject property *272 are no greater than those on the surrounding property. Keller stated that there were no physical limitations on installing sewers, only a capacity problem. Kemp stated that sewer capacity would be available if some of the lots with sewer allocation were not developed.
Robert F. Heffernan, a real estate expert, prepared a report detailing the costs of and returns from development of the property into lots for construction. He noted that if the property were zoned R-1 (one-acre lots) the developers could earn a net profit of $499,401. Conversely, if the property were zoned R-3 (three-acre lots) the developers would lose $367,960. In reaching his conclusions Heffernan relied in part to establish costs on plaintiffs' purchase price of $390,795. Heffernan also stated that completed houses constructed on three-acre lots would not sell since they would have to be priced at $180,000, a figure too high for the area. He therefore concluded that the property had been zoned into inutility since it was not economically feasible to develop the property in an R-3 zone.
Defendant sought to establish that the unique characteristics of the property justified the larger lots required by the 1979 zoning ordinance. Alan J. Dresdner, a professional planner, stated that the property was environmentally sensitive in terms of water resources. He observed that five streams flow through the property with four of them converging on the property to form the sole feeder of Lake George. Furthermore, he noted that this sole feeder was a trout maintenance stream making it more sensitive to water quality standards. Dresdner, relying on his examination of the Morris County soil conservation survey map, testified that the property was environmentally sensitive with respect to its soil because of the high ground water table.
Paul J. Costic, an engineer for the MUA, testified that although the MUA was currently expanding its capacity to treat sewerage, it had already allocated its added capacity to various property owners. He stated that he was unsure if *273 plaintiffs had applied for hook-ups to this added capacity but he noted that at the time plaintiffs claim their application was before the MUA, the MUA was allocating this added capacity. He observed, however, that applications would not be considered without preliminary subdivision approval from the planning board, a prerequisite which plaintiffs had not met. Costic noted that there was a possibility a part of the MUA capacity could eventually become available to plaintiffs.
Defendant disputed plaintiffs' economic contentions. Tracy Robin, a member of defendant's township committee, stated that based on his consultations with defendant's planner and defendant's engineer, the property could be developed at a profit in an R-3 zone. Dresdner testified that it was not a purpose of a zoning ordinance to ensure that a property owner would profit in developing his property. Rather, he stated that the purpose of the zoning ordinance was to provide for the most reasonable and efficient use of land. He observed that a property owner's losses in developing property are not necessarily the result of a burdensome zoning ordinance but rather are the function of several variables.
On February 22, 1983 Judge Gascoyne decided the case in an oral opinion. He found that the zoning of plaintiffs' property was neither discriminatory nor burdensome. Moreover, the judge noted that because plaintiffs' property was treated as agricultural, a nongrowth area as provided by the State Development Guide Plan (SDGP), he could not order that plaintiffs be allowed to develop the property at a greater density than allowed by the ordinance and comply with the principles of So. Burlington Cty. v. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158 (1983) (Mt. Laurel II), which had been decided in the interval between completion of the second phase of the case and his decision. Additionally the judge decided that application of the ordinance did not constitute an undue taking of property entitling plaintiffs to just compensation. Accordingly, he denied plaintiffs' request for site specific relief. On March 10, 1983 the judge issued an order incorporating the conclusions *274 contained in his oral opinion. The order did require defendant to amend its ordinance (but not with reference to plaintiffs' property) to provide for the indigenous poor within the township. Plaintiffs have appealed from that order.
In general plaintiffs argue that the evidence at trial indicated that plaintiffs' property has been zoned into inutility due to discriminatory and overly burdensome zoning regulations and these regulations constitute a taking of property without just compensation. Additionally plaintiffs argue that Mt. Laurel II does not bar them from relief. Plaintiffs maintain that the subject property and the surrounding property are similarly situated thus demanding the same treatment.
Defendant denies plaintiffs' contentions. Defendant contends that plaintiffs have not demonstrated their property has been zoned into inutility. Defendant further asserts that plaintiffs' property is different from the surrounding property.
It has been held that zoning regulations cannot create invidious distinctions between similarly situated property and thus we will assume that there must be real differences between plaintiffs' property and the surrounding areas in order to uphold their disparate treatment. See Rockhill v. Chesterfield Twp., 23 N.J. 117, 126 (1957).
Conflicting evidence was presented to the trial court concerning the nature of plaintiffs' property as compared to surrounding property. Plaintiffs sought to demonstrate that the properties were similar while defendant presented contrary evidence that plaintiffs' property was more environmentally sensitive than the surrounding property. Defendant noted that the subject property is unique because four streams flow through it and eventually meet on the property to form the sole feeder of Lake George. Additionally a fifth stream flows through the property and eventually meets the sole feeder of Lake George at a point just south of the property. Defendant also presented evidence indicating that the soil content of the subject property differed from that on the surrounding property. While plaintiffs *275 presented contrary evidence on these points, the trial court decided that plaintiffs lacked the proofs to establish that the different zoning was discriminatory.
If the trial court's findings could reasonably have been reached on sufficient credible evidence in the record as a whole, the findings should be affirmed. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974); State v. Johnson, 42 N.J. 146, 162 (1964). Here in view of defendant's evidence that the properties were not similarly situated, there was sufficient credible evidence supporting the trial court's finding that the zoning was not discriminatory.
Plaintiffs argue that the zoning ordinance limiting density on the property is overly restrictive. Plaintiffs maintain that the agreement between them and the commission eliminates the need for further protections of Lake George. Thus, plaintiffs conclude that defendant should defer to the commission in protecting Lake George from pollution and discard the zoning ordinance designed for this purpose.
Land use regulations should take into account ecological and environmental concerns. Mount Laurel I, supra, 67 N.J. at 186-187. Yet the regulations adopted cannot be used to thwart growth. Id. at 187. They must be only those reasonably necessary for public protection of a vital interest. Ibid. Here the record supports a finding that the zoning restrictions are not overly burdensome and are necessary to protect Lake George. Lake George had previously been polluted by development of upstream property not as environmentally sensitive as the subject property. Defendant deemed it necessary to rezone plaintiffs' property to protect Lake George from further pollution. Such a view seems reasonable in view of the streams flowing through the property. Agreement between plaintiffs and the commission concerning protection for the lake does not preclude defendant from undertaking to protect it additionally since defendant is ultimately responsible for land use under its zoning. Tp. of Dover v. Bd. of Adj. of Tp. of Dover, 158 *276 N.J. Super. 401, 411-412 (App.Div. 1978); N.J.S.A. 40:55D-62(a). Defendant sought to guarantee that Lake George would not be polluted by dense upstream development and its zoning regulation expresses its legitimate concern with the pollution of Lake George. Although the regulations go beyond the requirements of the commission, we conclude that we cannot say they are not reasonably necessary to ensure protection of a vital interest.
Additionally the three-acre zoning was necessary because the MUA would be unable to accommodate the sewerage produced if density of the property were increased as its sewerage treatment capacity has been filled. Plaintiffs established that the possibility existed that eventually they could obtain an allocation. But this eventual allocation was dependent on a current holder foregoing his allocation  too speculative an occurrence on which to rely to suggest that the density restriction is overly burdensome and restrictive.
At trial plaintiffs submitted evidence indicating that development of the property as currently zoned would result in a loss of $367,960. Plaintiffs also submitted evidence indicating that houses built on this property conforming to the zoning ordinance could not be effectively marketed. Therefore plaintiffs contended the property has been zoned into inutility as no reasonable use can be made of it. Plaintiffs accordingly argued that the zoning ordinance constituted a taking. The trial court rejected this contention.
Plaintiffs argue before us that the cost of development of their property under the restraints now imposed effectively denies them an opportunity to make reasonable use of the property and as such the restraints constitute a taking of property. Indeed they claim they will not be able to recoup their investment. Plaintiffs thus conclude that the zoning ordinance is beyond the powers delegated to the municipality. Defendant counters that plaintiffs' proofs did not establish that the zoning itself precluded practical utilization of the properties for reasonable and economically feasible purposes.
*277 We do not doubt but that the zoning of property into idleness by restraint against all reasonable use would be invalid as confiscatory and would amount to a taking without compensation. AMG Associates v. Tp. of Springfield, 65 N.J. 101, 112 (1974). But that is not the case here. The zoning ordinance permits residential development of one unit per three acres, a limitation on density necessary to control pollution of Lake George and to ensure proper treatment of sewerage. Plaintiffs presented evidence showing that development of the property as currently zoned would result in a loss to them. Even assuming that this is true, this evidence when examined in light of other factors does not establish that the property has been zoned into inutility. Plaintiffs' inability to make a profit may be traceable to a variety of reasons. Perhaps they paid too much money for the property for clearly the price they paid for the property greatly impacts on their opportunity to make a profit from its development. Poor investment and outside conditions occurring on and off the property can influence whether a property owner will profit from development or sale of the property. If a zoning ordinance could be invalidated simply because a developer could not make a profit under its terms, then by paying an unreasonably high price he could force a municipality to adopt a zoning ordinance permitting unsound development of its property. We conclude that in light of all the circumstances we cannot say the zoning ordinance precludes all reasonable uses of the property and thus we cannot hold a taking has occurred. See Orleans Builders & Developers v. Byrne, 186 N.J. Super. 432 (App.Div. 1982); In re Loveladies Harbor, Inc., 176 N.J. Super. 69, 73 (App.Div. 1980), certif. den. 85 N.J. 501 (1981).
As we previously noted, the judge thought that plaintiffs were barred from relief by Mt. Laurel II. In view of our conclusion that plaintiffs are not in any event entitled to relief we do not consider the Mt. Laurel II issue.
The order of March 10, 1983 is affirmed.