SMYTHE, Appellant and Cross–Appellee,

v.

BUTLER TOWNSHIP et al., Appellees and Cross–Appellants.

[Cite as *Smythe v. Butler Twp.* (1993), 85 Ohio App.3d 616.]

Court of Appeals of Ohio,
Montgomery County.

No. 13403.

Decided March 17, 1993.

*James M. Hill,* for appellant and cross-appellee.

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *John J. Amarante,* Assistant Prosecuting Attorney, for appellees and cross-appellants.

BROGAN, Judge.

June Smythe appeals from the judgment of the Montgomery County Court of Common Pleas overruling her motion for summary judgment and holding the zoning classification of her property constitutional.

Smythe advances two assignments of error, asserting that (1) the trial court erred in overruling her motion for summary judgment and granting judgment in favor of appellees inasmuch as the current zoning of her property is unconstitutional, and (2) the trial court erred in dismissing her claim for damages.

The facts of this case are as follows.

In 1986, June Smythe purchased a 31.9–acre parcel of real property ("the property") located in Butler Township in Montgomery County, Ohio. At the time of purchase, the land was zoned "A" (Agricultural Residential District), which requires a minimum of forty thousand square feet of lot area per residence.

In the period from 1986 through 1989, the Smythes submitted four applications to rezone the property from "A" to "R–2" (Single Family Residential District). However, the applications were all withdrawn either after the Butler Township Zoning Commission ("the zoning commission") recommended disapproval or before the zoning commission had considered them.

In July 1990, Smythe applied to the zoning commission to change the zoning of the property from "A" to "PD–1" (Planned Residential District) in order to construct thirty-four single-family residences. According to Dean Loomis, a trustee, PD–1 zoning differs from other plans in that the developer works closely with the governmental bodies in the planning process and develops the plan in steps rather than submitting a plan to be approved as a whole.

The following month, the Montgomery County Planning Commission recommended the plan be approved subject to the addition of a secondary emergency access to the site from Meeker Road. The zoning commission voted to disapprove the plan, and the Butler Township Board of Trustees denied the application for rezoning at its public meeting.

On January 22, 1991, Smythe filed a complaint against Butler Township and, among others, the Butler Township Board of Trustees, seeking a declaratory judgment to declare the existing zoning classification unconstitutional as it applied to the property, a permanent injunction restraining the defendants from enforcing the existing zoning classification, and damages.

The defendants filed their answer on February 26, 1991, and filed a motion for summary judgment on July 1, 1991. Smythe filed an amended prayer for relief on August 16, 1991, demanding a declaratory judgment finding the existing zoning classification unconstitutional as applied to the property, that the defendants be permanently enjoined from enforcing the existing zoning classification to the property, and damages in the amount of $100,000. Smythe filed a motion for summary judgment on July 1, 1991.

On February 18, 1992, the trial court overruled Butler Township's motion for summary judgment and also dismissed Smythe's claim of damages against each defendant.

On March 3, 1992, the defendants filed a second motion for summary judgment and a supplemental reply to Smythe's motion for summary judgment.

On April 8, 1992, the trial court overruled Smythe's motion for summary judgment and declared that the "A" zoning as applied to the property was not unconstitutional, holding that no showing was made that it was impossible or impractical to use the land for agricultural purposes. The court noted that the forty-thousand-square-feet requirement per lot is not unreasonable in an undeveloped township area, and that the estimates of cost of development presented were only the estimates of interested developers and referred to only one possible use of the land. Lastly, the court found that the zoning ordinance advanced the legitimate interests of Butler Township as the one-acre requirement conforms to the residential development nearby and is in conformity with the harmonious development of the general area.

Smythe filed an appeal from the trial court's decision on April 25, 1992, and the township filed a cross-appeal on May 6, 1992.

In her first assignment of error, Smythe asserts that the trial court erred in overruling her motion for summary judgment and granting judgment in favor of the appellees inasmuch as the current zoning of the property is unconstitutional.

In Ohio, zoning ordinances have a strong presumption of constitutionality. *Leslie v. Toledo* (1981), 66 Ohio St.2d 488, 490, 20 O.O.3d 406, 407, 423 N.E.2d 123, 124. Consequently, the party challenging the validity of a zoning classification has the burden of demonstrating its unconstitutionality. *Valley Auto Lease of Chagrin Falls, Inc. v. Auburn Twp. Bd. of Zoning Appeals* (1988), 38 Ohio St.3d 184, 185, 527 N.E.2d 825, 826.

In order for a zoning ordinance to be found unconstitutional, it must be "beyond fair debate" that the zoning classification prohibits the economically viable use of the land, without substantially advancing a legitimate interest in the health, safety, or welfare of the community. *Columbia Oldsmobile, Inc. v. Montgomery* (1990), 56 Ohio St.3d 60, 62, 564 N.E.2d 455, 457; *Ketchel v. Bainbridge Twp.* (1990), 52 Ohio St.3d 239, 243, 557 N.E.2d 779, 782. See, also, *Valley Auto Lease, supra* (zoning regulation may result in an unconstitutional confiscation where permitted uses are not economically feasible, or are highly improbable or practically impossible under the circumstances).

The validity of a zoning ordinance is "fairly debatable" if reasonable minds may differ; however, a mere difference of expert opinion does not satisfy this standard. *Cent. Motors Corp. v. Pepper Pike* (1979), 63 Ohio App.2d 34, 51, 13 O.O.3d 347, 358, 409 N.E.2d 258, 272.

"Where it appears from *all the facts* that room exists for a difference of opinion concerning the reasonableness of a zoning classification, the legislative judgment is conclusive. * * * Only where illegality is clearly demonstrated or where the ordinance is arbitrary, unreasonable or discriminatory is judicial interference warranted." (Emphasis added.) *Id.* at 51, 13 O.O.3d at 358, 409 N.E.2d at 272.

Further, "courts should resist the tendency to make a determination in regard to the validity of a zoning ordinance based on the mere conclusion or opinion of experts." *Id.*

We begin with an analysis of whether Smythe has been deprived of the economic viability of the property.

In support of her claim that the current zoning renders the property economically unviable, Smythe relies on the testimony of two experts concerning the possible development of the property, as well as on evidence presented that the property has not generated any income as a commercial farm for three years.

Charles Abramovitz of Woolpert Consultants developed the thirty-four-lot plan that was presented with the zoning application. His affidavit stated he computed estimates of construction costs and he stated at the meeting of the trustees that the finished homes would sell in the range of $350,000. He also noted that no plan was developed for the construction of homes under any other cost scale. George Oberer, president of the Oberer Development Company, submitted an affidavit as an expert in property development. Relying in part on Abramovitz's projected construction costs, he prepared comparables of the costs involved in the three-phase development contemplated within the parameters of A, R–1, and R–2 zoning. He asserted he used appellant's original land cost figures, adjusted to include interest and holding cost factors so as to reflect the actual cost of the property. He concluded that the land could not be developed at a profit within the parameters of R–1 or A zoning and could only be developed at a profit within the parameters of R–2.

We find that Smythe presented no evidence that she has been deprived of all economically viable uses for her land under the current zoning classification.

First, the fact that a developer is unable to profit from a parcel of property does not, in and of itself, merit invalidating a zoning ordinance. If such were the case, a developer could force a municipality to adopt a zoning ordinance permitting unsound development of its property simply by paying an unreasonably high price for the parcel. See *Albano v. Mayor* (1984), 194 N.J.Super. 265, 277, 476 A.2d 852, 858. Because the record does not indicate the actual purchase price of the property, it is possible that Smythe paid a premium over fair market price in the expectation that the property would be rezoned, thereby rendering the expectation a "self-fulfilling prophecy" by the purchase alone. *N. Westchester Prof. Park v. Bedford* (1983), 60 N.Y.2d 492, 502, 470 N.Y.S.2d 350, 356, 458 N.E.2d 809, 814. See, also, *Raskin v. Islip* (1992), 185 A.D.2d 923, 587 N.Y.S.2d 20 (to demonstrate that a zoning restriction is unconstitutional, a plaintiff must show with dollars and cents that under the current zoning the property is economically inviable); *Sakrel, Ltd. v. Roth* (1992), 182 A.D.2d 763, 582 N.Y.S.2d 492 (evidence of market value of property at time of acquisition and proof of current market value of the property as presently zoned is necessary to show economic inviability of property as zoned).

Second, Ohio courts, as well as the courts of numerous other states, agree that one who purchases property in the hopes of gambling on securing a zoning modification has no right to complain when the legislative body declines to rezone for the benefit of the gambling buyer. *Tempe v. Rasor* (1975), 24 Ariz.App. 118, 122, 536 P.2d 239, 243, citing *Phoenix v. Beall* (1974), 22 Ariz.App. 141, 145, 524 P.2d 1314, 1318; *Mintz v. Pepper Pike* (1978), 57 Ohio App.2d 185, 11 O.O.3d 180, 386 N.E.2d 849.

■ Third, most states agree that claimed economic loss alone does not justify rezoning. *Valley Auto Lease of Chagrin Falls, Inc., supra,* 38 Ohio St.3d at 186, 527 N.E.2d at 827; *Bartolomeo v. Paradise Valley* (1981), 129 Ariz. 409, 415, 631 P.2d 564, 570; *Corrigan v. Scottsdale* (1985), 149 Ariz. 553, 720 P.2d 528; *Crow– New Jersey 32, Ltd. v. Clinton* (N.J.1989), 718 F.Supp. 378. A landowner does not have a right to have his land zoned for its most advantageous economic use; the mere fact that the property would be substantially more valuable if used an alternate way is, in itself, insufficient to invalidate an existing zoning ordinance. *Sporkin v. Stafford Twp.* (1988), 227 N.J.Super. 569, 571, 548 A.2d 218, 219; *Rasor, supra.* A municipality "is not obliged to allow for the maximum density of construction that environmental factors will permit." *Sporkin v. Stafford Twp.* (1988), 227 N.J.Super. 569, 571, 548 A.2d 218, 219, citing *Mt. Laurel II* (1983), 92 N.J. 158, 315, 456 A.2d 390, 471. Ecological and environmental concerns must also be considered. *Albano, supra.* Suitability for a particular use does not mandate zoning to permit that use as a matter of law and to hold otherwise would be the very antithesis of sound zoning. *Rasor, supra,* 24 Ariz.App. at 122, 536 P.2d at 244.

■ We find that Smythe has not shown that she has been deprived of all practical uses of her land. While the record does contain some evidence that the development of single-family homes on the property as zoned would not be profitable, there is also evidence that the developers limited their testimony and plan proposals to the construction of homes in only one range of cost. Thus, Smythe did not even consider the possibility of alternate plans to construct fewer homes, more expensive homes, or less expensive homes on her property. Given these factors, we find that Smythe has not presented material evidence to demonstrate that she has been deprived of all economically viable uses of her land.

Smythe contends that the property has not generated any income as a commercial farm for three years and therefore it is not economically viable to operate the property as such.

The record shows that crops were planted in 1988, 1989, 1990 and 1991. In 1988 through 1990, a drought destroyed the crop and any profit that may have been earned. However, the photographic evidence submitted in the affidavit of Patricia Mathews, the Butler Township Zoning Inspector, depicts a healthy 1991 crop growing on a substantial portion of the property as of August 21, 1991. However, there is no evidence as to whether that crop was successfully harvested, thereby generating a profit. The trial court appropriately found that the appellant had not presented evidence that the property could not be profitably used for agricultural purposes.

■ Next, we must determine whether Smythe has demonstrated beyond fair debate that the property zoned as "A" is not substantially related to the public health, safety, morals or general welfare. The preamble to Article 8 of the Butler County Township zoning regulations states this (agricultural) district has been established to provide for agricultural activity on large tracts and areas of open land with a minimum of forty thousand square feet of lot area per dwelling unit. Among the reasons cited by the trustees for the denial of Smythe's rezoning application included traffic safety, aesthetics, neighborhood continuity, road capacity, area density, lot area considerations, flooding, the effect on the environment, sewer construction requirements, sewer safety considerations, and emergency vehicle access.

The right of the individual to use and enjoy his private property is not unbridled, but is subject to the legitimate exercise of the local police power. *Hudson v. Albrecht, Inc.* (1984), 9 Ohio St.3d 69, 9 OBR 273, 458 N.E.2d 852. It is within a city's police powers to regulate safety hazards such as the elimination of traffic congestion and the reduction of air and noise pollution to protect pedestrians and drivers. *Brown v. Cleveland* (1981), 66 Ohio St.2d 93, 20 O.O.3d 88, 420 N.E.2d 103. While traffic safety considerations alone will not justify a particular zoning restriction, promoting traffic safety should be considered in a comprehensive analysis of a zoning scheme. See *Columbia Oldsmobile, supra,* 56 Ohio St.3d at 66–67, 564 N.E.2d at 460–62.

Aesthetics should also be considered, although courts in Ohio and other states have specifically declined to give blanket approval to all regulations based solely upon aesthetics. See *Corrigan, supra.* However, the evolving trend has been to give aesthetics greater consideration as the appearance of a community is closely linked to its citizens' happiness, comfort and general well-being. *Pepper Pike v. Landskroner* (1977), 53 Ohio App.2d 63, 73, 7 O.O.3d 44, 49, 371 N.E.2d 579, 585; *Euclid v. Fitzthum* (1976), 48 Ohio App.2d 297, 2 O.O.3d 278, 357 N.E.2d 402. The trustees' concerns regarding aesthetics, traffic safety, and the other enumerated issues are important to the health, safety, welfare and morals of the community.

The only evidence produced by the appellant was that she could not profit upon her investment in the property as it was currently zoned by the township. Reasonable minds could also only conclude that it was "fairly debatable" that the zoning classification was necessary to the health, safety and welfare of the township. Accordingly, the appellant's first assignment is overruled.

In her second assignment of error, Smythe asserts that the trial court erred in dismissing her claim for damages. Due to our disposition of Smythe's first assignment of error, this issue has been rendered moot.

The appellees assert on cross-appeal that the trial court erred when it overruled their second motion for summary judgment. Pursuant to our discussion of the issue set forth in the first assignment of error, the appellee's assignment of error set forth in the cross-appeal has been rendered moot. See App.R. 12.

For the aforementioned reasons, the judgment of the Montgomery County Court of Common Pleas is affirmed.

*Judgment affirmed.*

WOLFF and FAIN, JJ., concur.