Plaintiff-appellant, Dingledine Basic Materials, Inc. ("appellant"), appeals a judgment entry of the Butler County Court of Common Pleas affirming the decision of the Butler County Board of Zoning Appeals ("BZA") to deny appellant's application for a conditional use zoning permit. We affirm.
Appellant owns the property at 5833 Hamilton-Eaton Road, Milford Township, Ohio ("Milford property"), which is part of the Sevenmile Creek basin and flood plain. Appellant seeks to establish a gravel mining operation upon the Milford property. Under the Butler County Zoning Resolution ("BCZR"), the property is presently zoned "A-1 Agricultural District," and it is designated an "Open Space" under the Butler County Official Land Use Plan ("BCOLUP"). BCZR section 7.038 provides that the use of agricultural property for commercial mines, quarries and gravel pits is permissible upon BZA approval of a conditional use permit.
On January 30, 1996, appellant filed with the BZA an application for a conditional use permit to operate a gravel mining operation. A hearing on the application was held on March 19, 1996, and the BZA voted three to one to reject the application. Appellant timely appealed the BZA decision to the common pleas court. In the course of the appeal, a procedural error at the application stage was discovered, and the common pleas court remanded the matter to the BZA for a new hearing.
On June 20, 1997, appellant again filed with the BZA an affidavit and application for a conditional use permit. Appellant supported its application with a Mining Impact Assessment prepared by an environmental consulting firm. The assessment contained a detailed description of the proposed operation, a reclamation plan, and an analysis of the operations potential impact upon water quality, flood control, and the surrounding area. It also included detailed geographical data, survey logs, environmental studies, a zoning and land use study, and a technical report.
On June 24, 1997, the BZA held a hearing on appellant's application. At this hearing, appellant presented testimony from three expert witnesses supporting its application, as well as the testimony of its attorney. The witnesses testified about the impact the mining operation would have upon the water quality and quantity in the area and how the potential impacts could be minimized. Appellant supplemented this testimony with numerous exhibits and reports. Throughout the presentation, appellant's attorney spoke about what actions appellant would take to guarantee the safety and enjoyment of the surrounding lands and water supply as well as the conditions appellant would meet to secure the BZA's approval.
The county departments then presented their own recommendations concerning appellant's application. All but two of the county departments recommended that the BZA deny the application. Representatives of the county departments testified that appellant's use of the Milford property as a gravel mine would not be compatible with the surrounding land uses and road capabilities. They also testified that appellant understated the impact of the mine on groundwater as well as the rental value of the Milford property for agricultural uses. Several residents who live around the Milford property — all of whom opposed the project — also spoke before the BZA. These residents expressed concerns about water contamination, the impact of the mine on their own properties, and whether the roads surrounding the land could support the vehicles used in mining operations.
Following these presentations, a motion was made to deny appellant's application for a conditional use permit. The subsequent vote was two to two. The BZA found that the motion to deny appellant's application had failed, but because there was not before the BZA a motion to approve the application the matter was tabled for future consideration. On July 15, 1997, the BZA again met to consider appellant's application. A motion to approve the application was made, and the resulting vote was two to two. The BZA considered the application denied because three members had not voted to approve the application pursuant to BCZR section 25.22. The decision was approved and journalized on August 19, 1997.
Appellant filed an administrative appeal of the BZA's decision with the common pleas court on August 26, 1997. Appellant also filed a complaint for declaratory judgment and damages. Appellant alleged that the BCZR was unconstitutional, arguing that it was not substantially related to the public health, safety and welfare, and that the BCZR and the decision of the BZA constituted an unconstitutional taking of property. The common pleas court held a hearing on May 29, 1998. Many of those individuals who had spoken at the BZA hearing were recalled and questioned further, and three new witnesses were also called to testify.
On July 31, 1998, the common pleas court issued a Judgment Entry affirming the decision of the BZA to deny appellant's application. The common pleas court found that there was a preponderance of the evidence to support the decision of the BZA. The common pleas court further determined that the evidence supported the finding that the proposed use conflicted with the BCOLUP'S designation of the Milford property as "Open Space." The common pleas court also denied appellant's request for declaratory relief finding that the BCZR, when read in conjunction with the BCOLUP, is not unreasonable or arbitrary. The common pleas court ruled that the BCZR and the decision of the BZA did not result in an unconstitutional taking because the Milford property had economically viable uses other than gravel mining.
Appellant appeals, raising three assignments of error.
Assignment of Error No. 1:
 THE COMMON PLEAS COURT ERRED IN AFFIRMING THE DECISION OF THE BUTLER COUNTY BOARD OF ZONING APPEALS WHERE THE; [sic] BZA PASSED NO RESOLUTION EITHER APPROVING OR DENYING A CONDITIONAL USE PERMIT, AND DID NOT EITHER APPROVE OR REJECT ANY PROPOSAL FOR A CONDITIONAL USE PERMIT FOR GRAVEL MINING AS LIMITED AND CONDITIONED BY RESTRICTIVE CONDITIONS.
In its first assignment of error, appellant argues that the BZA did not approve or deny appellant's application for a conditional use permit, and therefore the BZA did not take any action on the matter. Appellant asserts that this alleged inaction violated the BCZR and resulted in an unconstitutional deprivation of appellant's use of the Milford property and a taking of the Milford property without due process of law.
The BCZR governs the procedures which the BZA must follow in considering applications for conditional use permits. Pursuant to BCZR section 25.41, the BZA has original jurisdiction to consider applications for conditional use permits.[1] The BCZR also sets forth the necessary vote of the BZA which is required to grant a conditional use permit. BCZR section 25.22 provides, in pertinent part:
 Three (3) members of the Board shall constitute a quorum. The Board shall act by resolution; and the concurring vote of three (3) members of the Board shall be necessary to reverse any order or determination of the Zoning Inspector, or to decide in favor on an applicant in any matter of which the Board has original jurisdiction under this Resolution, or to grant any variance from the requirements stipulated in this Resolution. (Emphasis added.)
As is evident by the plain language of BCZR section 25.22, unless at least three members of the BZA vote to approve an application for a conditional use permit, the application must be considered denied.
In the present case, the BZA met to vote upon appellant's application on July 15, 1997. A motion was made to approve the application and issue a permit, and the subsequent vote was two in favor and two against. The application did not garner the approval of three members of the BZA, as BCZR section 25.22 requires, and the BZA considered appellant's application to be denied. Thus, it is clear that the BZA did take action on appellant's application, and appellant's assertions to the contrary are without merit.
Appellant asserts that the BZA's denial of its application resulted in an unconstitutional taking of its property without due process of law. Appellant argues that as a result of the BCZR and the BZA's decision, there is no longer any viable use of the Milford property because gravel mining is the only economically feasible use of the land.
In Goldberg Cos., Inc. v. Richmond Hts. City Counsel (1998),81 Ohio St.3d 207, 690 N.E.2d 510, the court delineated two separate challenges to any given zoning ordinance. First, it may be alleged that an ordinance is unconstitutional as applied to a particular parcel of land. Goldberg, 81 Ohio St.3d at 210. Second, it may be alleged that the ordinance amounts to a constitutional taking of property. Id.
In addressing the first challenge, that an ordinance is unconstitutional, zoning ordinances enjoy a strong presumption of validity. Cent. Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d 581,584, citing Valley Auto Lease of Chagrin Falls, Inc.v. Auburn Twp. Bd. of Zoning Appeals (1988), 38 Ohio St.3d 184,185. Any party challenging the validity of a zoning ordinance bears, at all stages of the proceeding, the burden of demonstrating that the provision is unconstitutional. CentralMotors Corp., 73 Ohio St.3d at 584. Furthermore, the doctrine of separation of powers dictates that "[t]he legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations." Willott v. Beachwood (1964),175 Ohio St. 557, 560. Thus, to prevail on this issue, appellant must show, beyond fair debate, that the ordinance is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Goldberg, 81 Ohio St.3d at 214.
The common pleas court found that appellant had not met the burden placed on him to show that, beyond fair debate, the BCZR is unconstitutional when read in conjunction with the BCOLUP. As noted by the common pleas court, not only is it reasonable to read the BCZR in light of the BCOLUP, the Ohio Supreme Court encourages such a practice. In Columbia Oldsmobile, Inc. v.Montgomery (1990), 56 Ohio St.3d 60, the Ohio Supreme Court stated that "regulating rural land use in counties, and * * * regulating land use in townships, require that zoning regulations promulgated by counties and townships be in accordance with a comprehensive plan." Id. at 66. Thus, the common pleas court was correct in interpreting the BCZR in light of the recommendations set forth in the BCOLUP.
The express purpose of the BCOLUP and the BCZR is to govern and maintain economic development within Butler County. See BCOLUP pp. 6-10; see, also, BCZR section 1.0. In this regard, these enactments seek to preserve the resources of the county, and maintain its rural spaces and preserves while still providing sufficient space for sustained growth. Appellant has failed to demonstrate that either these objectives, or the means used to achieve these objectives, are arbitrary and unreasonable, and not substantially related to the public safety, health or welfare of the county's citizenry.
Furthermore, appellant has failed to show that the BCZR and the decision of the BZA are contrary to the recommendations of the BCOLUP. "Open Space" is defined as follows:
 This land area generally approximates the one-hundred-year floodplain lands of the Great Miami River and Mill Creek basins, and along the numerous streams and creeks which pass through the County * * *. In addition, this category takes in associated natural areas and preserves, outdoor educational areas, Exceptional Warmwater Habitat, archeological and historic sites, groundwater aquifers (often covered with dense forest cover), and many of the lands with steep slopes found throughout Butler County.
BCOLUP p. 13. The BCOLUP provides specific goals and objectives for "Open Space" areas:
 These open space corridors are recommended to be kept free of urban growth and development and to be preserved in their natural state and/or utilized for purposes compatible with their primary function.
BCOLUP p. 22.
The BCOLUP notes that most of Milford Township is comprised of agricultural lands and "Open Space:"
 Much of Milford Township is designated vacant and agricultural land, to reflect the fact that over 75% of the land within the Township is classified as prime agricultural land. Open space constitutes the next largest recommended land use category for the Township.
BCOLUP p. 69. Based upon the composition of Milford Township, the BCOLUP sets forth a general development strategy for the township area:
 Milford Township may be considered one of the most rural in character within Butler County. Its major activity is agriculture at the present time and is expected to remain so within the foreseeable future.
BCOLUP p. 31. The BCOLUP then sets forth specific commercial and industrial development strategies:
 Limited amounts of commercial development are recommended by the Plan to allow for expansion within existing commercial areas. These designated commercial development areas are located in the center of Darrtown in the vicinity of State Route 177, and within and just south of the Collinsville area.
 Industrial development is recommended north of Harris Road in an undeveloped area with access provided by U.S. Route 127 and rail access provided by the Norfolk and Western Railroad, and a smaller industrial development area is proposed south and east of the Collinsville area, also with access provided by U.S. Route 127 and the Norfolk and Western Railroad.
 An existing gravel pit located south of Somerville is designated a mining and mineral extraction area.
BCOLUP p. 69. Thus, it is evident that the BCOLUP provides a comprehensive scheme of land development ad resource utilization throughout the county and townships. In addition, it provides a means for the county to set aside areas of land to be maintained as undeveloped "Open Space" or limited to agricultural use.
Because a gravel mining operation is a conditional use within an A-1 Agricultural District, it must conform to the development scheme and conditional use requirements for such a district.
 The intent of the A-1 Agricultural District is to reserve land exclusively for agricultural cultivation, very low density residential development and other activities that are basically rural in character so that agricultural areas may be preserved and maintained and can be protected from haphazard encroachment by urban development.
BCZR section 7.01. Commercial mines, quarries and gravel pits are permitted in A-1 Agricultural districts as conditional uses requiring BZA approval. BCZR section 7.0308.
BCZR section 25.51 provides that such operations are allowed where appropriate:
 It is the intent of the conditional use process to allow appropriate uses, which have been so identified by this code, to exist in Butler County in locations where they are compatible with their surroundings. Conditional uses are so designated because, while they are appropriate, the intensity of use they require is generally greater than other uses in the district, and additional requirements are necessary to ensure compatibility. (Emphasis added.)
As a conditional use, a gravel mining operation is required to meet the extensive conditions listed in BCZR sections 7.05, 25.521 and 25.52214. The BCZR makes specific reference to the scheme developed in the BCOLUP, and sets forth the basic requirements which any conditional use must meet:
 All uses designated as conditional uses shall meet the following requirements:
 a. Uses shall not be in conflict with the comprehensive development plan for Butler County.
 b. Uses shall be located in districts where they are designated as conditional uses by these regulations. C. Uses shall not adversely impact the health, safety, or welfare of the surrounding area.
BCZR section 25.521. BCZR section 25.52214 sets forth eighteen additional conditions which commercial mines, quarries and gravel pits must meet to gain approval.
Thus, a conditional use must not only conform to the recommendations of the BCOLUP, the use must also be compatible with surrounding uses. Therefore, if an operation meets all of the conditions listed in BCZR section 25.52214, but it is determined to be incompatible with the surrounding uses, nothing in the BCZR provides that a permit must be issued. In fact, BCZR section 25.51(c) clearly mandates that, in such a case, a permit should be denied.
Appellant has not demonstrated how such a comprehensive development is unconstitutional or how the BCZR fails to advance the purposes of the BCOLUP. These enactments are the products of rational choices by the county government and are clearly intended to provide the county with the means to maintain control over the location and degree of urban and commercial development. Unless shown to be arbitrary and unreasonable, we must defer to the judgment of the county authorities. Willott, 175 Ohio St. at 560. Appellant has failed to show that this development scheme does not substantially serve the health, safety, or welfare of the Butler County citizenry. Goldberg, 81 Ohio St.3d at 214.
The BZA had before it extensive evidence on the effects of the proposed use, and a review of the BZA's comments demonstrates that the BZA followed the mandates of the BCZR and the BCOLUP. We find that the common pleas court was correct in finding that the zoning enactments and the decision of the BZA were not arbitrary or unreasonable, and that they were substantially related to the public health, safety, and welfare.
The second type of challenge discussed in Goldberg is that a zoning ordinance amounts to a taking. In determining whether a taking has occurred, the Goldberg court reaffirmed use of the test presented in Agins v. Tiburon (1980), 447 U.S. 255,100 S.Ct. 2138. Agins states that a zoning ordinance amounts to a taking if it "does not substantially advance legitimate state interests * * * or denies an owner economically viable use of his land." Id. at 260, 100 S.Ct. at 2141. Thus, to prevail on this issue, appellant must set forth specific facts to show that the ordinance does not advance a legitimate government interest or that it denies an economically viable use of the land. Id.
Obviously, the first prong of the Agins test directly overlaps with the analysis for a claim that an ordinance is unconstitutional as applied and, as stated above, appellant failed to set forth sufficient evidence to establish his claim. Regarding the second prong of the Agins test, to prove that a property as zoned is not economically viable, the challenger must show that the permitted uses are not economically feasible, are highly improbable, or are practically impossible under the circumstances. Holiday Homes, Inc. v. Miami Twp. Bd.of Trustees (Oct. 19, 1992), Clermont App. Nos. CA91-11-096, CA91-11-097, unreported, at 7. A landowner does not have a right to have his land zoned for its most advantageous economic use. Smythe v. Butler Township (1993), 85 Ohio App.3d 616, at 621. Further, we have stated in prior cases that one who purchases property with knowledge of the current zoning restrictions may not challenge the constitutionality of the existing zoning regulation merely because he may lose a more generous profit if a change in zoning is not made. HolidayHomes at 5. Similarly, one who purchases property in the hopes of gambling on securing a change in zoning has no right to complain if the legislative body declines to re-zone the property for the gambling buyer's benefit. Smythe at 620.
In rendering its decision, the common pleas court noted that appellant's evidence regarding the economic viability of the Milford property stressed the value of gravel mining at the expense of other economic uses. Evidence was presented to the BZA and the common pleas court that, although gravel mining may be the most productive use of the Milford property, there are other economically feasible uses for the land. The land may be successfully used for commercial farming purposes. This conclusion was supported by testimony from the county representatives and reports before the common pleas court.
Even though it may be said that gravel mining would produce the most income for appellant, appellant is not guaranteed the right to have his land zoned for its most advantageous economic use. Smythe v. Butler Township (1993), 85 Ohio App.3d 616, 621. Appellant has failed to demonstrate that no other uses permitted in an A-1 Agricultural district are feasible. Having carefully reviewed the record, we find that the common pleas court correctly determined that appellant has not been deprived of all economically feasible uses of its property.
We find that the BZA did reach a decision to deny appellant's application for a conditional use permit. We also find that the BCZR and the decision to deny the permit did not result in an unconstitutional deprivation of use or taking of appellant's property. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE COMMON PLEAS COURT ERRED IN AFFIRMING THE DECISION OF THE BUTLER COUNTY BOARD OF ZONING APPEALS WHERE THE BOARD'S DIRECTOR OF PLANNING AND ZONING PRIOR TO THE HEARING CONCLUDED "* * * ALL THE CONDITIONS IN THE WORLD WILL NOT MAKE GRAVEL MINING COMPATIBLE WITH THE SURROUNDINGS BECAUSE OF THE RESIDENTS IN THE AREA * * *."
In its second assignment of error, appellant argues that, in making its determination, the BZA relied upon a single statement made by the Director of Planning and Zoning that no conditions could be imposed to make appellant's use compatible with the surrounding community. Appellant contends that reliance upon this statement was arbitrary, capricious and unreasonable, and resulted in an unconstitutional taking of appellant's property.
The BCZR provides what evidence the BZA may consider at hearings on applications for conditional use permits. Section 25.41 provides, in pertinent part:
 In considering an application for a conditional use, * * * the Board shall give due regard to the nature and condition of all adjacent uses and structures; and in authorizing a conditional use * * *, the Board may impose such requirements and conditions with respect to location, construction, maintenance and operation — in addition to those expressly stipulated in this Resolution for the particular conditional use * * * — as the Board may deem necessary for the protection of adjacent properties and the public interest.
In addition, BCZR section 25.22 provides, in pertinent part:
 The Board may call upon the County departments for assistance in the performance of its duties and it shall be the duty of such departments to render such assistance to the Board as may reasonably be required.
At the June 24, 1997 meeting, the BZA heard testimony from a number of individuals concerning appellant's application for a conditional use permit. Appellant presented three expert witnesses to testify in support of its application. The county departments then gave the BZA recommendations on whether to approve the conditional use permit. All but two of the departments recommended that the BZA deny the application. Those two departments which recommended that the BZA approve the permit both expressed concerns that the proposed gravel mining operation could pose a serious risk of contaminating the surrounding water supply.
A number of the residents who live near the Milford property also spoke to the BZA. Each expressed concern about the effects of appellant's proposed operation upon their properties. They were especially concerned about damage to the surrounding roads and contamination of their water supply. They also suggested that appellant is not abiding by the regulations which govern his current dumping of sewage waste on the Milford property. This led the residents to worry that appellant would not follow conditions set by the BZA on the operation of the gravel mine.
Even though the BZA was presented a substantial amount of testimony at the hearing, appellant asserts that one comment made by Mike Juengling ("Juengling"), the Director of Development for Butler County, was the sole reason appellant was not granted a permit. Appellant argues that Juengling told the BZA that "all the conditions in the world would not make it compatible because of the residents * * *," and that such a comment, and the BZA's reliance on the comment, displayed an "arbitrary, unreasonable and insupportable" attitude.
We find appellant's contention to be without merit. An independent review of the transcripts in this case has not revealed any such arbitrary comment by Juengling. In fact, our review reveals that appellant has both mis-quoted Juengling and taken his comments out of context. Instead, Juengling told the BZA, in relation to gravel mining in general:
 It is a conditional use in an Agricultural Zone because in some instances it can be compatible provided that there are the appropriate conditions put on it, and there are some conditions that are in the Zoning Resolution as it is.
 But just because it's a conditional use in an Agricultural Zone does not mean that it has to be permitted with conditions because there will be some cases when all the conditions in the world will not make it compatible with the surroundings. And because of the residents in the area we feel that it's not compatible.
Juengling then went on to explain that the Milford property is located in an "Open Space" area, and that a gravel mining operation is not listed as an appropriate use where land is designated "Open Space." He further explained that any conditional use within an A-1 Agricultural District must still conform to the BCOLUP:
 The Ohio Revised Code prohibits us [the county] from eliminating or prohibiting farm-farming in any land use category, either in the BCOLUP or through zoning. So, farming is allowed even in open space area. But nowhere in there does it say gravel mining and it doesn't — it also does not say gravel mining if you're going to use it for recreational purposes after the mining is done. And so, while a recreational use, boating, fishing, whatever, that would be considered open space but in the interim it doesn't say that you can use that open space for mining operations.
Furthermore, the BCOLUP sets forth what areas may be used for mineral extraction. Juengling spoke on this matter when he stated, in regards to that portion of the BCOLUP concerning Milford Township:
 The final paragraph says, "An existing gravel pit located south of Somerville is designated a mining and mineral extraction area." That's the only place in Milford Township that the plan calls out for mineral extraction, nowhere else. So this — this is the specific recommendation for the area for Milford Township.
Mr. Juengling did concede at the hearing before the common pleas court that, more than likely, no conditions could be imposed upon the proposed use so that it would be compatible with the surrounding residences. But, this concession was not made before the BZA, and he had often stated that, in the county's judgment, no conditions could make the proposed use compatible with the BCOLUP. Every county department had expressed to the BZA serious concerns about what effects the proposed gravel mining operation would have upon the surrounding lands, roads, and the water supply. Thus, we cannot say that Juengling's recommendation to the BZA displayed an arbitrary and unreasonable attitude towards appellant's application.
The BZA members also spoke at length about their concerns and what would be required of appellant before they would consider granting his application. Foremost, the BZA members demonstrated a grave concern about the safety of the water supply. They also raised serious questions about whether the roads surrounding the Milford property could handle the additional heavy traffic that a gravel mining operation would attract. The BZA members also showed skepticism of appellant's claim that the land could only be used for mining purposes. As noted by the BZA, although a gravel mine may be the most productive use of the land, productive agricultural uses of the land were shown to exist, and such uses would conform to the present zoning, the BCZR and the BCOLUP.
Thus, when Juengling's comments are read as a whole, and when the statements by the BZA are considered, it cannot be suggested that an arbitrary attitude was presented against appellant's application for a conditional use permit. Nor can it be argued that the BZA relied solely upon one mis-quoted comment by one witness. Appellant's arguments to the contrary are without merit. Accordingly, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE COMMON PLEAS COURT ERRED IN AFFIRMING THE DECISION OF THE BZA, WHERE A PREPONDERANCE OF SUBSTANTIAL, RELIABLE PROBATIVE [sic] EVIDENCE DID NOT EXIST TO SUPPORT THE ADMINISTRATIVE AGENCY'S DECISION, OR LACK OF DECISION. THE COMMON PLEAS COURT MUST REVERSE, VACATE, MODIFY OR REMAND.
In his final assignment of error, appellant asserts that the decision of the BZA was not supported by a preponderance of substantial, reliable and probative evidence. Appellant further argues that the weight of the evidence supported a finding that appellant's proposed use met the criteria of the BCZR for a permitted conditional use.
R.C. Chapter 2506 provides for the appeal of an administrative decision to the court of common pleas, and states that "the hearing of such appeal shall proceed as in the trial of a civil action." R.C. 2506.03(A). Though the hearing in the common pleas court is not de novo, it often resembles ade novo proceeding. Kisil v. Sandusky (1984), 12 Ohio St.3d 30,34. In reviewing the administrative decision, the court of common pleas must determine whether "the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. The decision of the administrative body is presumed to be valid, and the burden of showing its invalidity is upon the contesting party. Consolidated Mgt.,Inc. v. Cleveland (1983), 6 Ohio St.3d 238, 240. In making its determination, the court of common pleas must give consideration to the entire record and appraise the credibility of witnesses, the probative character of the evidence and the weight to be given it. Dudukovich v. Loraine Metro. HousingAuth. (1979), 58 Ohio St.2d 202, 207.
If the common pleas court's decision is appealed, the appellate court must determine whether the court of common pleas applied the appropriate standard of review. Id. at 207-208. Review by the court of appeals is limited in scope and the decision of the common pleas court must be affirmed "unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence."Kisil, 12 Ohio St.3d at 34. Included within the ambit of review by the appellate court is the question of whether the common pleas court abused its discretion. Id. at 34, fn. 4.
In the present case, there was a preponderance of substantial, reliable, and probative evidence to support both the BZA's decision and the common pleas court's affirmance of that decision. The BZA was presented with the testimony of numerous witnesses, and when BZA members made their own comments before voting, they referred to many of the issues raised in that testimony. The common pleas court was presented with witnesses and the full transcript of the BZA hearing, as well as the reports and exhibits which had been before the BZA.
Donald Fay, Project Manager for the Payne Firm, Inc., an environmental consulting firm hired by appellant, testified that the gravel mining operation would not affect water availability or quality and that it should improve protection against flood. Fay also testified that the operation would allow the aquifer below the gravel pit to recharge more quickly because there will be less soil between the aquifer and ground water. He also explained the monitoring procedures that would be used to protect the water quality in the area surrounding the gravel pit. He also explained how the site would be reclaimed for other purposes once the gravel pit was emptied.
Dr. Herbert Preul, a civil and environmental engineer and Professor Emeritus at the University of Cincinnati also testified on behalf of appellant's application. Dr. Preul testified that the soil at the Milford property was poor soil for agricultural purposes because it was subject to flood and drought and that it would produce crop yields far below the average for the area. He testified that a gravel mine was a more productive use of the Milford property. He also stated that the operation would be compatible with the surrounding area, primarily because the resulting pit could be used as a catch-basin to lessen the effects of floods.
Appellant's final witness was Walter C. Blair, a planning consultant and former Director of Planning for Hamilton who has consulted with many local communities concerning zoning matters. Mr. Blair testified about the zoning districts and roads surrounding the Milford property, and that operating a mining operation was compatible with surrounding uses. He also testified that many of the effects of the operation could be mitigated, and that using the site as a recreational facility when the mine was closed would serve the public good. He concluded that use of the Milford property as a mine and resulting recreational area would be the best use of the site.
Following appellant's presentation, many witnesses testified in opposition to appellant's application for a conditional use permit. Mike Juengling, Director of Development for Butler County testified that the applied-for gravel mine was not compatible with surrounding uses. He testified that the BCOLUP would not allow such an operation at the Milford property because the land was reserved for open space preservation or agricultural use. Furthermore, the roads surrounding the property could not handle the additional truck traffic the mine would bring.
Steve Bartels, Assistant Professor at the Ohio State University Cooperative Extension Service in Butler County, testified that appellant was correct that some crop yields could be lower due to the soil on the Milford property, but other crops would provide high yields in the soil. He did believe that possible contamination from the mine could be minimized, but he also believed that there still existed serious problems of well contamination due to spills from the railroad line beside the Milford property.
Greg Wilkins, the Development Service Manager of the Butler County Engineer's Office, testified that the roads surrounding the Milford property were not constructed to support the truck traffic associated with a gravel mine operation. He testified that the roads were both too thin and too narrow to handle the weight and frequency of the trucks. He also expressed serious concerns about whether oncoming traffic could be seen from truck cabins at the intersections. He was further concerned that the lack of safety measures at the nearby railroad crossings would present serious dangers to traffic.
Mike Brune of the Butler County Health Department gave a more favorable recommendation to the BZA. He stated that the Health Department would give a favorable recommendation to the proposed project, but there were concerns about the sewage sludge which appellant was presently dumping on the Milford property. He also expressed concerns that the mine would expose the underlying aquifer to an increased risk of contamination. Such concerns were also expressed by Mary Lynn Keplar of the Butler County Department of Environmental Services, who also recommended that the permit be approved.
Edsel Harrison, of the Butler County Soil and water Conservation District testified about the soil and soil conditions on the Milford property. He testified that the soil is prime soil for agriculture, and that appellant undervalued the rent value of the property for agricultural purposes. He also testified that the soil, if properly maintained, could be productive far into the future.
After the county departments had made their presentations, several residents spoke in opposition to granting appellant's application. The concerns of these residents mirrored the concerns of the county departments. There were numerous people who believed that the roads would be unable to support the trucks associated with appellant's proposed mine. There were also concerns about noise and dust and whether water contamination could be prevented. This was especially important because the Milford property borders a railroad line and crossing, and a chemical spill from that railroad line could easily enter the groundwater through the gravel pit. Several residents expressed doubts about whether appellant would follow regulations and conditions governing the project, asserting that it was not presently following regulations governing dumping sewage waste on the Milford property.
In light of the substantial testimony and exhibits before the BZA and the common pleas court, we find that the decision of the common pleas court was supported by a preponderance of substantial, reliable and probative evidence, and was not an abuse of discretion. The BZA had before it testimony from numerous individuals which supported denying appellant's application for a conditional use permit. Even though a gravel mining operation may be an appropriate conditional use under the BCZR, the BCZR mandates that conditional uses conform to the BCOLUP and be compatible with surrounding uses.
It was not an abuse of discretion for the common pleas court to find that the proposed conditional use was not compatible with the surrounding uses. There was a preponderance of substantial, reliable and probative evidence to support the judgment of the common pleas court. Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and KOEHLER, J., concur.
[1] BCZR section 25.41 provides, in pertinent part:
 The BZA shall have the power to hear and decide, in accordance with the provisions of this Resolution, application, filed as hereinbefore provided, for conditional uses * * *.